THE GALE SULKY HARROW MANUFACTURING COMPANY v. R. G. MOORE.

1. CONTRACT — *Rescission* — *Finding, Not Sustained.* To rescind a contract for the purchase of a chattel, the property purchased should be returned or offered to be returned within a reasonable time, unless it is of no value to either party; and it is *held*, that the testimony in the present case is insufficient to sustain a finding of rescission.

2. WARRANTY — *Breach* — *Measure of Damages.* Where a seeder is purchased on a warranty, and damage is claimed by reason of a breach of the conditions of the warranty, in that it fails to cover the seed that is sown, which results in a loss not only of the seed, but also of the use of the land on which it is sown, the purchaser will be entitled to recover for the loss that occurs while he makes a reasonable test of the fitness of the seeder to perform the work for which he purchased it; but after he ascertains that it will not do the work, and is wasting the seed, he should desist from its further use, and cannot enhance his damages by sowing crop after crop with the seeder, when he knows that the seed sown is wasted, and the use of the land on which it is sown will be lost.

3. FINDINGS, *Not Sustained.* The testimony examined, and found to be insufficient to sustain the findings of the jury.

*Error from Harper District Court.*

ACTION upon a promissory note. Trial at the October term, 1888, and verdict for defendant, *Moore.* The plaintiff *Company* brings the case here. The facts appear in the opinion.

*Shepard, Grove & Shepard,* for plaintiff in error.

*S. S. Sisson,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This action was brought upon a promissory note given by the defendant to the plaintiff for the purchase-price of a Gale sulky harrow and seeder. The note was executed June 8, 1885, for $65, and was payable September 1, 1886. The execution of the note was admitted, but the defendant claimed that the implement was sold with a warranty that it was well adapted to the work of seeding ground, that the material and workmanship of the same were first class in every particular, and that it would do the work in a satisfactory and farmer-like manner. He alleged that the representations were untrue; that the implement was inferior in quality, unfit for the purposes for which it was purchased, and wholly worthless. He alleged that he gave plaintiff due notice of the failure of the machine, and that it is now on his farm subject solely and exclusively to the order of the plaintiff. There is a further allegation that, by reason of the breach of the warranty, the defendant suffered damages to the extent of $405. The trial of the case resulted in a verdict in favor of the defendant, and the plaintiff complains here that the evidence is insufficient to sustain the verdict or the special findings that were made; that the findings are indefinite and inconsistent, and that the instructions were erroneous.

The record shows that Moore purchased the implement in June, 1885; that he seeded 40 acres in wheat with it in the fall of 1885, 16 acres of oats in the spring of 1886, and about 65 acres of wheat in the fall of 1886. Plaintiff claims that

the evidence of defendant was wholly insufficient to sustain the claim of rescission, and therefore that its demurrer to the evidence should have been sustained. The jury found that Moore rescinded his contract, but not until after the note became due and the payment of the same was demanded.

If the defendant had relied solely on the single defense of rescission, we would be inclined to agree with the contention of plaintiff, that the defense was insufficient, and that the findings warranted a judgment in its favor. If Moore desired to rescind, it was his duty to place plaintiff *in statu quo* as nearly as possible, and therefore he should have returned or offered to return the implement, unless it was wholly worthless to both parties. From the testimony it cannot be said that it was valueless, and neither can it be said that there was a rescission.

"In order, however, that the purchaser be entitled to rescind the contract, he must return the property or offer to return it within a reasonable time. He cannot retain and use the property, and at the same time say he repudiates and rescinds the contract of the purchase." (*Cookingham v. Dusa,* 41 Kas. 229; see, also, *Aultman v. Mickey,* 41 id. 348; *Weybrich v. Harris,* 31 id. 92.)

The defendant used the implement for seeding through three seasons without giving notice to plaintiff that it was defective or insufficient, and without returning or offering to return it. Indeed, he continued to use it up to and after the maturity of the note, and the jury find that the offer to return was not made until payment was demanded. He first seeded 40 acres in wheat in 1885, which was all the wheat sown on his farm for that year; then, in the spring of 1886, he used the same implement for sowing his oats, and used no other; and afterward, in the fall of 1886, he used it for seeding 65 acres of wheat, although he says it had been shown to be defective and worthless. He claimed that it did not properly cover the seed, but left the greater part of it exposed upon the surface of the ground. This defect, if it existed, was a patent one, which the defendant, who used the implement, must have seen and known from the beginning. Within the authorities cited,

it must be held that the continued use of the implement after learning of the alleged defects should be regarded as a waiver of defendant's right to rescind, and that the offer to return was not made within a reasonable time.

If this was the sole defense, it might be said that judgment should go for the plaintiff; but as damages are claimed for a breach of the conditions of the warranty, we must look further. It may be said, however, that the testimony is insufficient to sustain a finding of rescission. To sustain his claim of damages, testimony was offered as to the quantity and value of the seed used, each seeding for three seasons; that most of the same was wasted by the defective seeder; that but little of the seed was covered or grew, and that he lost the use of the land on which the seed was sown. It was further shown that the defendant operated the implement the greater part of the time, and he testified that he noticed its defective operation, and that it covered scarcely any of the seed, but left it exposed on top of the ground. Notwithstanding this fact, the jury specially find that the defect in the seeder "was not easily seen." This finding is in conflict with the testimony of the defendant. According to. his statements, the defect was an obvious one, and he described the appearance of the ground after the seeder passed over it, leaving the greater part of the seed on the surface. He testified that three-fourths of the wheat was uncovered, and he thought that ninety-nine hundredths of the oats were left on the top of the ground. This would be so manifest a defect that it could not be overlooked by anyone; and besides, he said that the defect in the seeder became worse, and its operation less satisfactory from the beginning. Much of the testimony that was offered in regard to damages suffered by him throughout the three seasons was given over objection, and should have been excluded. He could not enhance his damages by sowing crop after crop with the seeder, when he knew that the seed sown and the land on which it was sown would be wasted. If the defects are such as are claimed by the defendant, they were so apparent that he must have become aware of them within a day or

two after beginning its use. If it was defective, he would be entitled to recover for the loss that occurred while he made a reasonable test of the fitness of the implement to perform the work for which he purchased it; but after he ascertained that it would not do the work, and was wasting the seed, he should have ceased its use, and cannot recover for the loss of seed, labor or land which was used or employed after that time.

There is a singular inconsistency between the claims of defects made by defendant and his conduct in continuing to use the seeder season after season, not discarding it until a payment of the purchase-price was demanded. When he saw three-fourths of the seed wheat uncovered and wasted in 1885, it is strange that he continued the use of the seeder until 40 acres were sown; and after he saw that only a little of the seed thus sown germinated, and that the crop was a failure, it is strange that he should sow his oat crop with it in the spring of 1886; and stranger still, that after seeing that ninety-nine hundredths of the oats were left on top of the ground, and that both the oat crop and the preceding wheat crop were failures from the defects in the seeder, he should use it again in the fall of 1886 for seeding about 65 acres in wheat, when no change or repair had been made of the implement. The testimony of losses occurring from seeding, after the defendant had a reasonable time to ascertain the unfitness of the implement and learned that it was worthless, should have been rejected.

Although errors are assigned on the instructions given by the court, we think the plaintiff in error has no cause to complain. The charge of the court fairly presented the case to the jury, but, for the errors pointed out, there should be a reversal of the judgment and a new trial. That will be the judgment of this court.

All the Justices concurring.