[Civil No. 1898.   Filed June 8, 1922.]

[207 Pac. 364.]

PRATT-GILBERT COMPANY, a Corporation, Appellant, v. FEN S. HILDRETH, Appellee.

1. SALES—PARTIES CAN FIX TIME FOR TEST OF TRACTOR, OR BUYER HAS REASONABLE TIME.—The parties to a contract for the sale of a tractor had the right to fix their own time within which it should be practicable to determine its conformity to the guaranty, and, in the absence of a provision fixing such time, the buyer is entitled to a reasonable time under the circumstances.

2. SALES — STATEMENT BUYER WOULD HAVE TRACTOR FOR USE IN SPRING DOES NOT SUSTAIN FINDING HE HAD UNTIL SPRING TO TEST.—A statement by the seller's agent that, if the buyer ordered a tractor then, he would save money on the purchase

On the general rule as to waiver, by use for purpose of test, of right to rescind for breach of warranty or noncompliance with contract, see note in 36 L. R. A. (N. S.) 468.

On implied warranty in addition to stipulated test, see notes in Ann. Cas. 1916A, 956; L. R. A. 1915B, 1131.

On duty to place other party *in statu quo* on rescission of contract for sale of personalty, see note in 30 L. R. A. 44.

price and would have the tractor for use in his fall or spring plowing when he wanted it, does not sustain a finding by the trial court that the buyer was given until the time for spring plowing within which to test the tractor to ascertain whether it conformed to the guaranty.

3. SALES—REASONABLE TIME FOR TEST DEPENDS ON ALL THE CIRCUM- STANCES.—A reasonable time within which a buyer can test the article to ascertain its conformity to the guaranty is such as to give him a fair and sufficient opportunity, all circumstances con- sidered, and the buyer of a tractor would have until the follow- ing spring to make the test if the conditions on his land were such that it could not be made before that.

4. SALES — KNOWLEDGE BY BUYER IN FALL THAT GUARANTY WAS BROKEN PREVENTS RESCISSION IN SPRING.—Even though a buyer may have had until spring to test a tractor to ascertain its con- formity to guaranty, he could not rescind his contract in the spring if he knew, in the fall before, that the tractor did not conform to the guaranty.

5. SALES—IMMATERIAL WHETHER KNOWLEDGE OF BREACH OF GUAR- ANTY WAS ACQUIRED BY SPECIFIED TEST.—In determining whether the buyer of a tractor rescinded promptly after finding that it did not conform to the guaranty, it is immaterial whether such knowledge was acquired by the tests specified in the contract of sale, if the buyer in fact had such knowledge.

6. SALES—BUYER MUST PROMPTLY NOTIFY SELLER OF RESCISSION FOR BREACH OF GUARANTY.—A buyer must promptly notify the seller of a breach of guaranty, so that the seller will not be deprived of the use of his money or required to pay interest to the buyer and will not be deprived of opportunities for resale.

7. SALES—EVIDENCE HELD TO SHOW TRACTOR COULD NOT BE RETURNED IN SUCH CONDITION AS TO RESTORE THE STATUS QUO, SO AS TO JUSTIFY RESCISSION.—In an action to recover the purchase price paid for a tractor, evidence that extensive repairs had been made by the buyer on the tractor, for which he paid, thereby indicating they were due to improper handling of the tractor which would prevent his right to have the repairs made free by the manu- facturer, and that some of the repairs consisted in welding a cylinder head, *held* to show that the tractor was in such shape that the seller could not be restored to *status quo*, so that rescis- sion could not be had.

APPEAL from a judgment of the Superior Court of the County of Maricopa. F. H. Lyman, Judge. Reversed.

Messrs. Chalmers, Stahl, Fennemore & Longan and Mr. W. E. Ryan, for Appellant.

Messrs. Gandy & Cunningham, for Appellee.

McALISTER, J.—This is an action by Fen S. Hildreth against the Pratt-Gilbert Company, a corporation, in which he seeks to recover the purchase price of a Monarch tractor sold him by the latter. From a judgment for plaintiff in the full amount asked for, $1,856.70, and an order denying its motion for a new trial, Pratt-Gilbert Company appeals.

It appears from the complaint that in the latter part of June, 1917, appellee, Hildreth, ordered from appellant a Monarch tractor which arrived in Prescott, Arizona, the latter part of July, 1917, and a few days thereafter was driven to appellee's ranch in Yavapai county; that it was purchased for the express purpose of plowing, disking and preparing the land on appellee's ranch for planting to crops, a fact then well known to appellant, who at the time of making the sale to appellee warranted that the said tractor was fully adapted to the particular purpose for which appellee desired it and that it would "develop eighteen (18) brake horse-power at the drawbar and thirty (30) horse-power at the crank shaft, and that said tractor would handle and pull four fourteen-inch plows in the soil on plaintiff's said ranch, the condition of which said soil and the position and location of said ranch were to defendant company well known"; that appellee, relying upon said warranty, ordered and received said tractor and paid therefor the sum of $1,650 and for freight thereon from the factory at Watertown, Wisconsin, to Prescott, Arizona, the further sum of $206.70; that appellee was unable to use the tractor for plowing at the time he purchased it because of the hardness of the soil on his ranch due to the drought, and that he kept said

tractor on his premises properly housed and protected from the elements until the condition of the soil was such that the tractor could be used, which was in the spring of 1918, and that upon a trial of it in the work for which it was purchased it failed to fulfill the conditions of the warranty above set forth, in that it did not and could not pull four fourteen-inch plows as aforesaid and did not and could not develop eighteen brake horse-power at the drawbar and thirty horse-power at the crank shaft, which said fact was immediately thereafter, to wit, on April 20, 1918, communicated to appellant, together with a demand for a return of the purchase price, including the freight, notice at the same time being served on appellant that appellee was ready to return the tractor, which was then at its disposal on his ranch in Yavapai county, in as good condition as when purchased.

The answer admits the sale and delivery of the tractor and the payment of the purchase price, but denies the warranties claimed, and alleges that the sale was made upon an agreement that if, after a three-days' test by appellee, the tractor did not work well, he would give appellant written notice thereof stating wherein it failed, whereupon the latter would send a competent man to put it in shape, and, if this could not be done appellee should then immediately return the tractor to appellant; that the failure to give notice that the tractor did not work well after a trial as above stated or its use by appellee after three days from the time it was delivered to him without giving notice as to wherein it failed should operate as an acceptance thereof and a fulfillment of all warranties pertaining to the sale; that the tractor was delivered on July 29, 1917, a trial thereof had in behalf of appellee by his agent, Bob Southers, who accepted it, whereupon appellee on August 8, 1917, paid the purchase price; that at no time previous to April 20, 1918, did appellee notify appellant that said trac-

tor did not work well nor offer to return the same; that the notice and offer on said last-mentioned date were not within a reasonable time from August 7, 1917, the day of acceptance.

It appeared from the evidence that about a week after the tractor had been delivered and, according to appellant, tested, and accepted by appellee through his representative, a request for the payment of the purchase price was made, but appellee, declining to accept the guaranty of the factory people whom he did not know, refused payment unless appellant, a local company, would guarantee that the tractor would do the work at his ranch. Consequently the following letter was delivered to appellee, whereupon he gave appellant his check for $1,650, having paid the freight when the tractor was unloaded in Prescott:

"Pratt-Gilbert Company.

"Phoenix, Arizona, 8—7—17.
"Mr. Fen S. Hildreth,
   "Fleming Bldg.,
      "Phoenix, Ariz.
"Dear Sir: As per your verbal conversation with our Mr. Doe this afternoon regarding the work the tractor purchased from us recently will do, we hereby guarantee said tractor to handle four fourteen-inch plows, and will develop 18 brake HP. at the drawbar, and 30 brake HP. at the crank shaft.

"Hoping that this will meet with your approval and thanking you for your very many courtesies, we beg to remain.

"Yours very truly,
"PRATT–GILBERT CO.,
"CYRIL S. GILBERT."

Attached to this letter was the guaranty of the Monarch Tractor Company, evidently in the form given with all its machines, which contained the warranties alleged in the answer and signed by appellant as well as by the manufacturer. These guaranties were delivered to appellee and the purchase price

paid August 7 or 8, 1917, nine or ten days after the delivery of the tractor. Hence it would seem to be clear that it was not then understood by either party that the three days' test required by the factory guaranty had been made, or, if so, that the tractor was accepted in consequence of it; otherwise, appellee could have had no purpose in demanding and appellant none in giving its separate guaranty. But even if it had been made appellant, in order to satisfy appellee completely as to the tractor's fitness for his purpose, guaranteed in its letter of August 7, 1917, reliance upon which prompted the payment of the purchase price, that it would "handle four fourteen-inch plows, and will develop 18 brake HP. at the draw-bar, and 30 brake HP. at the crank shaft," though no definite time for ascertaining whether it would do this was given, and appellant contends that from August 7, 1917, the date of payment, to April 20, 1918, the date of the letter of rescission, a period of over eight months, is unreasonable and as a matter of law constitutes a waiver of any breach of warranty and an acceptance, and bars appellee's right to rescind. This is true unless there was a definite agreement fixing the time, or, in the absence of such an agreement, that there were conditions over which the parties had no control rendering it impossible to make the test within a reasonable time, for there is no question as to the right of the parties to fix their own time, and under all the authorities when none has been fixed the purchaser is allowed a reasonable time. 35 Cyc. 439.

Appellee alleged, however, and the court so found, that appellant through its agent gave him until the fall or spring plowing to make the test, but the sufficiency of the evidence to support this finding is challenged, and in support of its position appellant cites the following excerpt from the testimony of appellee, which is all the record contains on the subject:

"Q. At the time that you bought this tractor, was there any time specified when you were to try it?    A. Yes, in a way.

"Q. State what that was, and when?    A. In my talk with Mr. Doe in the St. Michael Hotel, in July, 1917, I told Mr. Doe I didn't want the tractor right then.    He says, 'You give me the order for the tractor, because you will save some money by it, and then you can use it this fall or the spring when you are going to use it, and you will save this much money.'

"Q. Did he say how much?    A. I think it was about $170 he said I would save."

The purport of Doe's statement is that by purchasing the tractor at that time appellee would save money and then have it for use in the fall or spring, or whenever he intended to use it.    The word "use" is not synonymous with the words "test" or "try," and there is nothing in the context indicating that it was intended to convey that idea.    But it is only by giving it this meaning that the finding can be sustained, and without passing upon the objection to the admissibility of this testimony, urged upon the ground that it was oral and that, when an agreement "made in parol is afterwards reduced to writing, the writing is presumed to contain the contract in its entirety" (*Lanham* v. *Louisville & Nashville R. R. Co.,* 120 Ky. 351, 86 S. W. 681), it sufficiently appears that the evidence does not justify the finding.

No time for determining whether the tractor would fulfill the warranties having been agreed on by the parties themselves, it was incumbent upon appellee to ascertain this fact within a reasonable time, and by this is meant a "fair and sufficient time and opportunity, all the circumstances considered, including his own, to test and examine the property and ascertain whether it corresponds with the warranty or not." *Boothby* v. *Scales,* 27 Wis. 626; *Cookingham* v. *Dusa,* 41 Kan. 229, 21 Pac. 95.

It is contended in behalf of appellee that he met this requirement by alleging in his second amended complaint on which the case went to trial, and proving to the satisfaction of the court which found it to be a fact, that on account of the hardness of the soil on his ranch as a result of the drought his first opportunity to make the test was in the spring of 1918. If it be true that he was prevented by the condition of the soil from ascertaining before spring whether the tractor would do what it had been guaranteed to do, it might be held that he had acted within a reasonable time, because to have required earlier action under those conditions would have rendered his warranty useless, since it would have been demanding the impossible, and this the law does not do, but whether he was able to test the machine under the proper conditions before rescinding, as he claims was both his privilege and duty, is immaterial, since it appears from the testimony of appellee himself: that he learned as early as October, 1917, that the tractor would not do the work it was warranted to do, or, to use his own words, "they [referring to his employees] said I was stuck; that it wouldn't work"; "that the tractor was used in October and was not able to pull more than two plows," and also from his original complaint in this action in which he alleged as follows:

"That immediately thereafter [August 7, 1917] said plaintiff placed said tractor in operation in work for which it was purchased and which it was intended to do as above set forth, and plaintiff alleges that said tractor never at any time fulfilled the conditions of the warranty set forth in that the said tractor, the same being then and there properly and carefully handled, did not and could not pull four fourteen-inch plows as aforesaid."

It is immaterial whether appellee tested the machine under the conditions called for by the agree-

ment if he learned from a test under any circumstances that it would not do what it had been guaranteed to do. It is plain that if it would not pull two mold-board plows, a test to demonstrate whether it would pull four was unnecessary, and when he ascertained this fact it became his duty to notify appellant promptly of his decision to rescind, because, as very appropriately and correctly said in *Boothby* v. *Scales,* above:

"It is inconsistent with the nature of the right or privilege thus given the purchaser, that there should be any unnecessary delay in the exercise of it. The seller in the meantime is deprived of the use of his property and perhaps of the opportunity for resale. He is liable to refund the purchase money with interest from the time of sale, or, if it has not been paid, he loses the interest on it. These considerations are sufficient to require promptness and forbid needless delay on the part of the purchaser. If it appears that he had ample time and opportunity to test and examine the article, and ascertain its quality or capacity with reference to the warranty, and might have conveniently done so, but neglected to do it, such neglect should be regarded as a waiver of the right to rescind, and as an election on his part to retain the property, subject to such claim for damage as he might subsequently establish."

See *Cookingham* v. *Dusa,* above; *Gale Sulky Harrow Mfg. Co.* v. *Moore,* 46 Kan. 324, 26 Pac. 703; *Best Mfg. Co.* v. *Hutton,* 49 Mont. 78, 141 Pac. 653; *Southern Gas & Gasoline Engine Co.* v. *Adams & Peters* (Tex. Civ. App.), 169 S. W. 1143; *Northern Electrical Mfg. Co.* v. *H. M. Benjamin Coal Co.,* 116 Wis. 130, 92 N. W. 553; 2 Black on Rescission and Cancellation, par. 542.

The evidence discloses that the tractor was used many times by appellee's employees before the letter of rescission was written, though it is claimed that each instance was merely an effort to test it; but,

whether this be true or not, a number of repairs became necessary as a result and were made by appellee at a cost of several hundred dollars, notwithstanding the Monarch Tractor Company agreed in its warranty, signed also by appellant and delivered to appellee at the time of payment, "to furnish free of charge, any part that may prove defective within one year," though in the same instrument it reserved the right to "require the return of such defective part, freight or express prepaid, to the factory for inspection and examination," and assumed "no responsibility when the machine or part returned indicates misuse or neglect or alteration. or repairs made outside its factory." None of the parts needing repair or replacement, however, among which was a cracked cylinder head, was sent to the company for that purpose; but whether this was prompted by the fact that they were not defective but broken as a result of misuse or negligence does not appear. If they had been merely defective, it would seem as if appellee would have called upon the warrantor to "make them good," appellant's special warranty not covering repairs, because a purchaser would not willingly pay for replacing or repairing a defective part when the seller had agreed to do this free of charge. That his failure in this respect was prompted by his belief that the injuries were not due to a defective part, but to misuse or neglect of the tractor after its delivery to him, is strengthened by the testimony of C. H. Pratt, one of the owners of appellant company, that appellee stated to him in the spring of 1918 that the water had frozen in the cylinder and cracked it, and by that of the witness R. J. Freestead that C. H. Pratt repeated this statement to him in the presence of appellee who did not deny it. The cylinder head had been repaired in Kingman by welding, and the opinion of Freestead, a farm implement ex-

pert and tractor demonstrator, as to whether it would be all right in the future, was sought; but the witness was unable to answer, not knowing the exact character or place of the break. The evidence further discloses this condition of the tractor: A connecting rod burned out, a cylinder scored, an oil pipe and cylinder rods broken, and the tracks worn and out of line. It follows from this that it was in such shape that appellee could not restore the *status quo,* and where this is the case a rescission cannot be had. *Cookingham* v. *Dusa,* above; *Burnley* v. *Shinn,* 80 Wash. 240, Ann. Cas. 1916B, 96, 141 Pac. 326; *Bradley* v. *Palen,* 78 Iowa, 126, 42 N. W. 623; 35 Cyc. 440.

The judgment of the lower court is reversed and the case remanded, with directions to dismiss the complaint.

ROSS, C. J., and FLANIGAN, J., concur.