[Civil No. 1968.  Filed March 14, 1923.]

[213 Pac. 400.]

# PRATT-GILBERT COMPANY, a Corporation, Appellant, v. H. RENAUD, Appellee.

1. Principal and Agent—Recital of Agency in Order for Goods is Notice of Agency, and Signing Order is Admission of Such Notice by Buyer.—Where order for a tractor recited that the concern transmitting the order for the buyer to the manufacturer were the general agents of the manufacturer for the sale of tractors in the state where the order was given, *held*, that not only did recital constitute notice to buyer of the agency, but that the signing of the order was an admission of such notice.

2. Pleading—Amendment to Conform to Proof Held Proper.— Amendment of answer to conform to proof should have been allowed where not only was everything alleged in the amendment already in evidence, but the facts so alleged were admitted.

3. Sales—Order Held Accepted by Delivery of Goods.—Although order for tractor specified that it should not become binding until seller accepted it and forwarded a duplicate of the order to the buyer, and no duplicate of the order was ever signed by the seller and delivered to the buyer, yet the order was accepted by the delivery of the tractor by the seller to the buyer, so that the terms of the order became a binding contract upon both parties as respects the provisions therein as to warranty.

4. Estoppel—Buyer Could not Claim That Manufacturer's Agent, Sued as Seller, was not Entitled to Limitation of Warranties in Order for Goods.—Buyer suing manufacturer's agent for rescission and return of purchase price of tractor because of breach of warranty, having sued the agent as being in fact the seller, could not claim that defendant was not entitled, as seller, to benefit of provisions in the order or contract for the tractor limiting seller's liability as respects warranties of quality.

5. Sales—Trial—Continued Use of Article Constitutes Acceptance—Instruction Leaving Question of Law to Jury Erroneous.—The buyer's remodeling, overhauling, contracting with third parties for use of a purchased tractor, or his continued use of the tractor after knowledge of defects, are as a matter of law acts of ownership amounting to a final acceptance, precluding return of the tractor and rescission of the purchase for breach of warranty of quality, and an instruction stating that these are acts "from which the jury would be warranted in finding a final acceptance" is erroneous as leaving a question of law to the jury.

6. SALES—USE OF TRACTOR HELD AN ACCEPTANCE.—Where tractor
    was used by buyer for three weeks after making repairs at his
    own expense, after full knowledge of defects, this was an un-
    reasonable time, and such use was inconsistent with the theory
    of testing the machine, and amounted to a final acceptance and
    waiver of right to rescind the purchase for breach of warranty.
7. CONTRACTS — WHETHER CONTRACT HAS BEEN AFFIRMED IS FOR
    COURT ON UNDISPUTED FACTS.—Where the facts are not disputed,
    whether there has been an affirmation of a contract is a ques-
    tion of law for the court.

APPEAL from a judgment of the Superior Court
of the County of Maricopa.   Joseph S. Jenckes, Judge.
Judgment reversed and cause remanded.

Messrs. Chalmers, Stahl, Fennemore & Longan,
for Appellant.

Messrs. Hayes, Laney & Allee, for Appellee.

LYMAN, J.—This appeal involves the right to
rescind, for breach of warranty of quality, a sale of
personal property after delivery of the article and
full payment of the purchase price, the original trans-
fer having been based upon an executory contract,
claimed by the appellee, Renaud, in his complaint to
have been verbal, involving warranties, express and
implied, as to quality, but alleged by the appellant,
Pratt-Gilbert Company, in its answer, to have been
on a written contract containing definite warranties
of quality, and expressly excluding all others.

There is presented here, first, the question as to
how the contract of purchase was made; whether it
was verbal, as claimed by the appellee, Renaud, or
whether it was incorporated in the written agreement,

---

6. Use as waiver of right to rescind for breach of warranty or
noncompliance with contract, see notes in 14 L. R. A. (N. S.) 1107;
36 L. R. A. (N. S.) 467.
    See 2 C. J., p. 819; 13 C. J., p. 781; 21 C. J., p. 1225; 31 Cyc.
448; 35 Cyc. 55, 259, 439; 38 Cyc. 1511.

as contended by appellant, Pratt-Gilbert Company. Upon this phase of the controversy, the record shows that Pratt-Gilbert Company was general distributing agent of the Monarch Tractor Company, located in Wisconsin; that upon application of Renaud to this agent to buy a tractor he was told that it had none, but that one might be ordered for him from the manufacturer, Monarch Tractor Company. Thereupon Renaud signed a written order, which is set out in the answer, and is of the following tenor:

"Order for Neverslip or Lightfoot Tractor.

"To Monarch Tractor Co., Watertown, Wis.,
    U. S. A.

"Dated at Phoenix, Arizona, the 23d day of August, 1917.

"The undersigned, H. Renaud, of Phoenix, county of Maricopa, state of Arizona, R. R. No. ——, hereby purchases from Monarch Tractor Co., of Watertown, Wis., U. S. A., subject to the conditions of agreement and warranty printed on the back of this order, and made a part hereof, to be shipped on or about the —— day of ——, 19—, to Pratt-Gilbert Co., at Phoenix, via railroad, 30–10 horse power Neverslip (or Lightfoot) tractor complete with top. And I (or we) agree to pay the freight on the same from the factory and to accept said tractor on arrival. For which I (or we) agree to pay the sum of $1,885.00 and make settlement for said tractor as follows, all payments to be made in New York or Chicago exchange. This price of $1,885.00 does not include freight. Freight about $210.00.

"It is expressly agreed that this order shall not be countermanded, and that title to the tractor shall not pass to the purchaser until the purchase price herein agreed shall have been paid in full, and delivered to the Monarch Tractor Co.

"It is further agreed that the tractor herein ordered shall be, and remain, personal property, in whatever manner it may be annexed to realty. This order shall not become binding until accepted by the Mon-

25 Ariz.—6

arch Tractor Co., in Watertown, Wis., and duplicate of this order forwarded to the purchaser.

"[Signed]  H. RENAUD."

Indorsed: "Delivered."

"Warranty.

"The seller warrants the tractor herein ordered to be well made of good materials, and durable if used with proper care, and agrees to furnish free of charge, any part that may prove defective within one year; and may require the return of such defective part, freight or express prepaid to the factory for inspection and examination; and assumes no responsibility when the machine, or part returned, indicates misuse or neglect or alterations or repairs made outside its factory. If upon three days' trial, with proper care, the tractor fails to work well, the purchaser shall immediately give written notice to Monarch Tractor Company at Watertown, Wis., and to the agent from whom it was purchased, stating wherein the tractor fails, and shall allow a reasonable time to send a competent man to put it in good working order, and the purchaser shall render necessary and friendly assistance to operate it. If the tractor cannot then be made to work well, the purchaser shall immediately return it to the agent, and the price paid shall be refunded, which shall constitute a settlement in full of the transaction.

"Use of the tractor after three days, or failure to give written notice to Monarch Tractor Company and their agent or failure to return the tractor as above specified, shall operate an acceptance of it and a fulfillment of this warranty.

"This warranty cannot be changed or abridged, and excludes all implied warranties.

"MONARCH TRACTOR COMPANY."

No duplicate of this order was signed by the Monarch Tractor Company, and delivered to Renaud, but in due time the tractor specified in the order was shipped to Pratt-Gilbert Company, and by it delivered to and received by Renaud, on or about the 1st of October, 1917, who immediately proceeded, with the assistance and under the direction of a man furnished

by the Pratt-Gilbert Company, to make a test of the tractor, to determine whether or not it fulfilled the terms of warranty specified in the executory contract of sale. After a three days' tryout of the tractor on the farm of Renaud in plowing and discing, Renaud sent his check for the full purchase price of the tractor to Pratt-Gilbert Company, but stopped its payment before it was presented. Whereupon, according to the testimony of Renaud, but denied by appellant's witnesses, the following colloquy took place:

"So I came down to Mr. Gilbert's, and he says, 'What is the matter with you; why did you stop that check for?' I says, 'I don't think that the tractor is practicable. We can't make it go. The chain comes off and the track come off, and many other things.' 'Well,' he says, 'that is foolish. This tractor is new, and it ain't adjusted right. We will adjust them and fix them so it will run right.' 'Well,' I says, 'Mr. Pratt, I am awfully afraid—I don't think it will never do the work.' He says, 'Don't be afraid; we are behind that'; he says, 'We will make it good; I will promise you.' I says, 'It is this way; your word is good, Mr. Pratt. I will go out and tell the president of the bank to pay you that check.' So I did."

Thereupon the check was paid on October 8, 1917. Thereafter, and continuing until March 15, 1918, Renaud continued to use the tractor in his farming operations, having some parts and repairs from time to time supplied by Pratt-Gilbert Company. The tractor was then returned by him to Pratt-Gilbert Company, with notice that he rescinded the sale and demanded a return of the purchase price, which was refused. This action is for rescission of the sale and recovery of the purchase price, including freight · on the tractor from Wisconsin to Phoenix, Arizona, with interest.

Renaud was permitted to, and did, introduce evidence of a conversation between himself and Cyril

S. Gilbert, an officer of the Pratt-Gilbert Company, which was had between the two on the occasion of signing the written order for the tractor, as stating the agreement upon which the tractor was purchased. This seems to have been allowed upon the theory that the order signed by Renaud never ripened into a contract of purchase, because the order, or a duplicate of the order, was never delivered to him bearing the written approval of the Monarch Tractor Company, the party to whom the order was directed. The answer upon which the case was tried alleged that the written order had been fully complied with by delivery of the tractor, specified in the order, to Renaud, and its acceptance by him, after making the test, provided for in the agreement. Pratt-Gilbert Company further acknowledged itself by its answer as bound by and having assumed the conditions of said written agreement subsequent to the acceptance of the tractor by Renaud. There is no pleading responsive to the answer.

In the course of the trial, after the defendant had introduced a part of its evidence, it moved to amend its answer in two particulars. It asked that the following words be incorporated:

"That at said time defendants were the general agents of the Monarch Tractor Company for the sale of said tractors within the state of Arizona, and, when defendants accomplished sales of said tractors, the orders for the same were addressed to and directed to the said Monarch Tractor Company, which said facts were at all times then and there known to and understood by the plaintiff."

At the time of offering this amendment the written order containing appellee's signature had already been received in evidence. That order contains a recital that the defendants, Pratt-Gilbert Company, were the general agents of the Monarch Tractor Company for the sale of tractors in the state of

Arizona. That fact constituted not only notice to appellee of the agency, but the signing of the order was an admission of such notice. The execution of the order by the appellee was also an admission of the fact that, at least when this sale of a Monarch tractor was made by appellant, the order consummating such sale was directed to the Monarch Tractor Company. Not only was everything alleged in this amendment already in evidence; but the facts alleged in it were admitted by the appellee.

Another amendment offered was to insert in said answer the following words: "As so made by and between the plaintiff and defendants"—so that the sentence would read: "The agreement as so made by and between the plaintiff and defendants, as to the sale of the tractor to plaintiff, was made as above recited and set forth." The position of this sentence in the answer made it refer to the written order. The appellee not only admitted, but based his action upon, the allegation that the sale of the tractor was made to him by the defendant. This sentence added to that allegation the further statement that the terms and conditions of such sale were contained in the written order. The evidence was already fully before the court, to which this pleading was sought to be made responsive, and the amendments should both of them have been allowed.

There is no dispute that the machine delivered to Renaud was the identical one described in the written order, nor is there any claim or testimony of any agreement intervening between the original ordering of the tractor and its delivery to and receipt by Renaud. There is no pleading or evidence of any mistake, misrepresentation or fraud in connection with the signing of the written order by Renaud. The question as to which one of these two alleged agreements should control and determine the mutual

obligations of the parties in the premises was submitted to the jury in the following instruction:

"Now, his [Renaud's] claim is upon a verbal agreement. He claims there was no writing; that the agreement was entirely verbal between him and the Pratt-Gilbert Company. . . . Now, there is the issue between the plaintiff and the defendant, the plaintiff claiming that they made oral warranties, or rather made an oral contract, in which there were certain express warranties, and also implied warranties, the Pratt-Gilbert Company claiming that they made no oral agreement with him, but that they made this agreement with the Monarch Tractor Company upon which these warranties were printed on the back, and that those were the warranties which they made to Mr. Renaud and no others. Now, that is the only issue for you to determine in this case, whether the warranties incident to this contract of sale were as stated by Mr. Renaud, or whether they were written ones, as contended for by Pratt-Gilbert Company, stated on the back of this order blank addressed to the Monarch Tractor Company. That is the issue for the jury to determine, whether it was as Mr. Renaud claims, or as the Pratt-Gilbert Company claims."

The statement that Renaud claims there was no writing, if referring to the evidence, is hardly correct. Renaud admits signing the written order; but his counsel deny the legal effect of it, for the reason, apparently, that no duplicate of this order signed by the Monarch Tractor Company was ever delivered to Renaud in token of the acceptance of the order. It is admitted, however, that the thing itself, the tractor, which Renaud ordered and agreed to take under certain conditions, was in due time delivered to and received by him. It is a strange contention that the promise to do should be considered as of more importance and acceptable than the fulfillment of the promise.

In the case of *Kingman* v. *Watson,* 97 Wis. 596, 73 N. W. 438, there was a written order signed by the purchaser for a threshing-machine, which provided as follows:

"That this order is given subject to the acceptance of Kingman & Co."

The acceptance of this order seems to have been signified in no other manner than by a delivery to Watson, who signed the order, of the machine contracted for. It was objected in that case that there was no acceptance of the order by Kingman & Co., and concerning it the court said:

"This appears to have been a valid contract, binding upon both parties. The defendant had signed it, and was therefore bound by its terms and conditions. The plaintiff was bound in like manner, for [it] had been signed at its request, and the defendants accepted it. *Vilas* v. *Dickinson,* 13 Wis. 545. Every agreement may be reduced to an acceptance of an offer. The agreement is perfect as soon as the offer is accepted. 3 Am. & Eng. Ency. of Law, 841. It is familiar law that, if one person agrees to do a particular thing, provided another shall do a certain other thing, performance by the latter supplies the lack of previous promise to do the thing, and entitles him to enforce the agreement of which his act was the consideration. *Beckwith* v. *Brackett,* 97 N. Y. 52; *Smith* v. *Rector etc. of St. Philip's Church,* 107 N. Y. 618, 14 N. E. 825; *L'Amoreux* v. *Gould,* 7 N. Y. 349; *Low* v. *Foss,* 121 Mass. 531. Thus, the delivery by the plaintiff of the threshing-machine outfit to the defendant, pursuant to his order therefor, bound the latter to perform the terms of the order, and the acceptance of the defendant's order by the plaintiff in like manner bound it to comply with the stipulations therein to be performed on its part. That there was a valid contract of sale to the effect stated in the order, binding on both parties, cannot admit of question."

There also seems to have been some confusion as to whether the written order could be invoked by the Pratt-Gilbert Company, when in terms it was directed to the Monarch Tractor Company. That is a question which might possibly have been raised by the Pratt-Gilbert Company; but nothing of that sort appears in the answer. The defense is based wholly upon the terms of the written order, with an implied, if not an express, assumption of liability for the performance of the seller's obligation under it. It seeks not to evade liability for its execution, but to have its obligation in the premises measured by it. The appellee, in bringing suit to rescind the contract of purchase, and in such suit making Pratt-Gilbert Company the defendant, was not in a position to question the relation of Pratt-Gilbert Company to the contract of purchase. This in effect is saying that the Pratt-Gilbert Company is the seller for the purpose of returning the purchase price, but is not the seller for the purpose of setting up any defense which it might have growing out of the terms of the contract of sale. Such a position is not only repugnant to conscience, but legally untenable. The written order is complete in itself, and by its terms expressly and definitely excluded any other statement of the negotiations for the sale of the tractor, defining not only the transfer of the property and the warranties as to its quality, but providing for the means by which the tractor is to be tested to determine whether or not it conforms to such warranties. The written agreement, having been established, must continue to be the only basis of the sale, unless upon some new consideration a different agreement becomes substituted, or there is found to be some infirmity in the form or execution of the written agreement.

A question somewhat similar in effect to this arose in the case of *Ventura Mfg. & Implement Co.* v. *War-*

*field,* 37 Cal. App. 147, 174 Pac. 382, where a purchase was made, as in this instance, through ·a distributing agent of the manufacturer, and suit was brought against the distributing agent rather than against the manufacturer, who was the nominal seller named in the contract. The court says:

" . . . That the warranty of the Pioneer Company is, in the very nature of the situation as disclosed by the record, the warranty of the plaintiff. The latter, as the general distributing agent in California of the former, has necessarily assumed as such agent all the burdens and conditions of the warranty; this being shown by the undisputed fact that the contract as to the particular tractor in question is between the plaintiff and defendant, and not between the Pioneer Company and the defendant."

The objections made to the written order raise no question of fact. There was no question of fact before the jury, the determination of which could furnish any guide as to which contract, oral or written, should be binding upon the parties. The jury should have been instructed that the sale of the tractor was made under the written order, and not by verbal agreement. The effect of mutual dealings between the parties, relating to the tractor after its sale, should have been submitted to the jury under proper instructions; but such dealings, whatever they were, could not furnish the basis for the instruction above referred to.

The first error committed in this connection was the admission of parol evidence of the sales agreement, after it came to the attention of the court in the cross-examination of Renaud, a witness in his own behalf, that he had signed a written order for the tractor. Wigmore on Evidence, 2447; *Littlejohn* v. *Fowler,* 5 Cold. (Tenn.) 284; *Hatch* v. *Pryor,* 3 Keyes, 441; *Dunn* v. *Hewitt,* 2 Denio (N. Y.), 637; *Harris* v. *Eubanks,* 1 Speers, 192. The objections

made to the written order furnish no sound reason for the admission of parol evidence.

As to the rule by which the jury should determine whether or not the appellee had accepted the tractor and forfeited the right to rescind the contract, the court was asked to give this instruction:

"The court instructs the jury that, when a purchaser has time for the examination of the purchased article, or time for the examination and trial after delivery, with the option of accepting or rejecting that purchased article during a time specified for examination and trial,. that the purchaser must reject that article within the time specified, otherwise he cannot rescind the contract under which the sale was made except in case the time for test and approval or rejection has been extended by acts or inducements of the seller, in which case the purchaser must then reject the article within a reasonable time after knowledge of defects which to his mind warrant that rejection. The buyer cannot under any circumstances whatever, pending a test for purposes of approval or rejection by him, do acts which amount to acts of ownership of the article. Remodeling, overhauling, contracting with third parties for use of the property, continued use by buyer or those under him, after knowledge of defects, are acts of ownership which amount to a final acceptance of the property by the purchaser and preclude him from returning it."

This seems to be a correct statement of the law. It was not, however, given, but was changed by the court so as to read as follows:

"The court instructs the jury that, when a purchaser has time for the examination of the purchased article, or time for the examination and trial after delivery, with the option of accepting or rejecting that purchased article during a time specified for examination and trial, the purchaser must reject that article within the time specified, otherwise he cannot rescind the contract under which the sale was made except in case the time for test and approval or re-

jection has been extended by acts or inducements of the seller, in which case the purchaser must then reject the article within a reasonable time after knowledge of defects which to his mind warrant that rejection. The buyer cannot, under any circumstances whatever, pending a test for purposes of approval or rejection by him, do acts which amount to acts of ownership of the article. Remodeling, overhauling, contracting with third parties for use of the property, continued use by buyer or those under him, after knowledge of defects, are acts of ownership from which the jury would be warranted in finding a final acceptance of the property by the purchaser which would preclude him from returning it.''

The undoubted effect of this change is to leave it to the discretion of the jury whether such acts of ownership as are stated in the instruction shall be considered by it as a final acceptance of the property or not. That, however, is a discretion which neither the court nor the jury has a right to assume.

In the case of *Pratt-Gilbert Co.* v. *Hildreth,* 24 Ariz. 141, 207 Pac. 364, this court decided that the exercise of ownership and dominion over property beyond that required for the purpose of making a test, after knowledge of defects, if there are any, constitutes in law an acceptance of the article being tested, and, where the superior court had failed to give effect to that rule, and the evidence showed that the property had been used by the buyer beyond the needs and requirements of making a test, and after knowledge of the defects, this court was authorized to not only reverse the judgment of the lower court, but to render such judgment as the superior court should have rendered in the premises.

The sole function of the jury in this particular was to determine whether or not there had been a remodeling, overhauling, contracting with third parties for the use of the property, continued use by the

buyer or those under him after knowledge of the defects, and, after having found such facts, it had no further discretion in the premises. The effect of this instruction was to make the jury the judge of both law and fact, with the implied permission to return a verdict contrary to the law.

The rule is stated thus in Black on Rescission and Cancellation, paragraph 599:

"If the purchaser of a tool, implement, machine, apparatus, or any other article intended to serve a useful purpose, discovers that he has been deceived or defrauded, or that the article is defective or unsuited to its purpose, but nevertheless continues to use it, not for the purpose of testing it or trying to make it available (or to an extent substantially greater than is necessary for testing or adjusting), but for the purpose of deriving a benefit or advantage from its use, he will be held to have waived his right to rescind the purchase, and cannot thereafter return the article and claim a restoration of the money paid for it."

See *Fox* v. *Wilkinson*, 133 Wis. 337, 14 L. R. A. 1107, 113 N. W. 669; *Cookingham* v. *Dusa*, 41 Kan. 229, 21 Pac. 95; *Gale Sulky Harrow Mfg. Co.* v. *Moore*, 46 Kan. 324, 26 Pac. 703; *Brown* v. *Foster*, 108 N. Y. 387, 15 N. E. 608.

Appellant contends that the judgment is contrary to the law, and unsupported by the evidence. The remedy sought depends upon the following provision of the Sales Act:

"Where the goods have been delivered to the buyer, he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods, or if he fails to notify the seller within a reasonable time of the election to rescind, or if he fails to return or to offer to return the goods to the seller in substantially as good condition as they were in at the time the property was transferred to the buyer. But if deterioration or injury of the goods is due to the breach of warranty, such deterioration or injury

shall not prevent the buyer from returning or offering to return the goods to the seller and rescinding the sale." Rev. Stats. 1913, § 5236.

The jury returned a verdict for the appellee, but without fixing the amount of his recovery. Upon that verdict the court rendered judgment for the appellee for the full amount of the purchase price of the tractor, including freight from the point of shipment to Phoenix, Arizona, with interest. In order that the determination of this objection may be relieved from any dependence upon other questions considered in this opinion, we will assume that the rights of the parties in the premises are to be determined by the terms of an oral agreement, as contended for by the appellee, with warranties express and implied incident to such agreement, and giving full effect to such new promises of the appellant as are claimed to have been made by the appellee coincident with the payment of the purchase price check and subsequently, and passing by the apparent acceptance of the tractor following its initial test during the first three days of its possession by the appellee, and, passing over the use of the tractor during the intervening months, in the course of which appellee says it wore out two sets of tracks, we will consider only the circumstances immediately preceding the 15th of March when the tractor was sent back to the appellant with notice that a rescission of sale was claimed. The events which transpired at that time were stated by one Johnson, a witness for the appellee, whose statements, if not conclusive upon the party calling him, were at any rate not disputed by him. Johnson says he used the tractor at Marinette for a period of about two weeks, and concerning the occasion and purpose of its use there he says:

"The contract to do the plowing at Marinette was a verbal one. Mr. Renaud was to stand half of the

expense, and I was to stand half, and we would split the profits fifty-fifty. I was to use Mr. Renaud's tractor. The contract was for discing and some plowing; for discing the contract price was $1.25 per acre. I did no plowing there at all.''

Johnson further says:

''Mr. Sprague (an employee of Renaud) had been driving the tractor prior to that time. I don't know how long he had been driving it, but I saw him driving it there. He was just finishing up harrowing and he brought the machine in. Mr. Renaud and I both talked about having the machine fixed up and overhauled, and he consented to it. I bought and paid for ten bolts and took them down to Kunz Bros. and had holes drilled in them and had the bolts split so I could use a locknut on them. . . . During the nine days overhauling I gave the machine, I put four oversize pistons and had the babbit run in the four connecting-rods, put in sixteen new connecting-rod bolts and a few little minor things, tightening things up. The cylinders were not ground, but the valves were. The bearings were babbitted at Kunz Bros., and think Mr. Renaud paid for it. Pratt-Gilbert Company gave me four new pistons; I don't believe Mr. Renaud paid for them.''

Concerning the condition of the machine prior to its overhauling by him, Johnson says:

'' . . . We pulled the tractor out north of the house and I took the crank-case off and found two connecting-rod bolts laying in the bottom of the crankcase. One was off of two different bearings and one about to come out.''

Renaud testified that ''from the beginning, the tractor would not go,'' and his testimony throughout is a continued assertion that the tractor was radically defective in performance and quality; that it would not pull three twelve-inch plows; and that these defects became apparent as soon as the machine was placed upon trial, but that its subsequent retention and use were because of the statement made

by someone on behalf of appellant that Pratt-Gilbert Company was behind the machine, and that it would make it good. Renaud says that he had this assurance first on October 8, 1917, and many times afterwards. When pressed to fix the times on which these statements were made, he finally says, "In January, February, and earlier." He does not, however, undertake to tell what was said at any other time than on the occasion of October 8th, more than five months before returning the machine, during which it was used more or less continuously in his farming operations. When Johnson took charge of the machine he says:

"Sprague had been driving the tractor prior to that time. He was just finishing up harrowing, and he brought the machine in."

This is the language of commercial use, and that use was interrupted only by the completion of the work to be done. In Johnson's further statement above quoted, he says that he spent nine days overhauling the machine, incurring expense to Renaud of repairs and replacement of parts. These were clearly acts of ownership, and indicate that he was no longer depending upon the promise alleged to have been made on behalf of Pratt-Gilbert Company that it would make the machine good. If Pratt-Gilbert Company was still assuming the burden and expense of putting the tractor in condition to perform the terms of warranty, why should Renaud gratuitously have relieved it of that burden? If Pratt-Gilbert Company was no longer assuming to be responsible for the machine, and Renaud knew of that fact, as apparently he did know it, then he could not claim to be making some further test upon the strength of Pratt-Gilbert's promise made subsequent to the original sale. The continued use of goods for considerable time for convenience or profit

after full knowledge of the existence of breach of warranty is a waiver of the right to rescind the sale. By the testimony of Johnson more than three weeks were spent in use of the machine after all possible claim upon Pratt-Gilbert Company had been abandoned, and with full knowledge of the condition and capacity of the tractor. This was under the admitted circumstances an unreasonable time, and the use was inconsistent with the theory that Renaud was merely testing the machine to determine if it complied with the agreement of purchase.

Williston on Sales, page 1010, states the rule governing the rescission as follows:

"The remedy of rescission, if allowed at all, is allowed on broad principles of justice. The basis of the remedy is that the buyer has not bought what he bargained for."

The same author also says:

"The right of rescission is an alternative remedy based on equitable principles, and must be confined within equitable limits. Not simply in regard to rescission for breach of warranty, but in regard to rescission of contracts generally, it is the law that the party seeking to rescind cannot do so if he has obtained a benefit under the contract which he cannot restore." Williston on Sales, p. 1015.

In a case already cited, *Brown* v. *Foster,* 108 N. Y. 387, 15 N. E. 608, there is a statement of the same principle to this effect:

"An application after trial of the machinery to the use of the vendee in the regular conduct of his business, is as significant as the sale to others, and such an act is as unequivocal. Whether profit is sought by that use or by a sale can make no difference. The effect of the sale would not depend upon the price obtained, nor the effect of the 'use' upon the efficiency of the machinery. In either the object is the same, the advantage of the vendee through instruments obtained by contract from the vendor,

and such act expresses an unmistakable assent that the machine is in deliverable state, and that it does conform to the contract. It is an election to take the benefit of the contract, although its execution by the vendor was different or inferior to that expected."

See *Palmer* v. *Banfield,* 86 Wis. 441, 56 N. W. 1090; *Pratt-Gilbert Co.* v. *Hildreth,* 24 Ariz. 141, 207 Pac. 364.

Where the facts are not in dispute, it is a question of law for the court to determine whether or not there has been an affirmation of the contract. *Mizell* v. *Watson,* 57 Fla. 111, 49 South. 149; *Hodge* v. *Tufts,* 115 Ala. 366, 22 South. 422.

The judgment will be vacated, and the case sent back to the trial court for such further proceedings as may be in accord with this opinion.

McALISTER, C. J., and ROSS, J., concur.