[Civil No. 3780.   Filed March 15, 1937.]

[65 Pac. (2d) 1379.]

MATHILDA J. FORST, Appellant, v. INTERMOUNTAIN BUILDING AND LOAN ASSOCIATION, a Corporation, Insolvent, and H. S. McCLUSKEY, Receiver of INTERMOUNTAIN BUILDING AND LOAN ASSOCIATION, a Corporation, Insolvent, Appellee, and THE VALLEY NATIONAL BANK, a National Banking Association, Garnishee.

Mr. E. O. Phlegar, for Appellant.

Mr. Thomas W. Nealon, Mr. John L. Gust and Mrs. E. G. Monaghan, for Receiver Appellee.

Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld, for Garnishee.

LOCKWOOD, J.—This is an appeal from an order of the superior court of Maricopa county granting the motion of H. S. McCluskey, as receiver of the Intermountain Building and Loan Association, an insolvent corporation, hereinafter called the company, to quash a writ of garnishment theretofore issued by said superior court on a judgment in favor of Mathilda J. Forst, hereinafter called plaintiff, and against the company. There is very little, if any, dispute in regard to the material facts of the case, and they may be stated as follows:

The company had for a number of years been doing business in the states of Arizona and Utah as a building and loan association, and had entered into contracts of many types with different parties. On April 18, 1933, Guadalupe R. Gallegos and others, in their own behalf and on behalf of others similarly situated, filed suit in the District Court of the United States for the District of Arizona against the company, alleging ''That each of the plaintiffs herein is a contract creditor of the defendant, and each holds an express contract lien to secure the debt of said defendant corporation due to said plaintiffs as hereinafter more fully appears.'' The complaint then alleged, in much detail, that the company was hopelessly insolvent and doing business at a loss, so that its assets were rapidly diminishing. The prayer of the complaint was, among other things, that an account be taken of all the affairs of the company, that its indebtedness to the plaintiffs and all those similarly situated be ascertained and that the assets of the company be properly applied to the debts of its various creditors, and, in order to accomplish this, that a temporary receiver be appointed, with all the usual powers of such receiver, to take possession of all the assets of the company of every nature, care for the same, and, in general, to obey the

orders of the court necessary to carry out the purposes of the suit. Process was duly served, but for some reason a receiver was not appointed until April 20, 1934, when the court made an order the terms of which, so far as material to the issues of this case, read as follows:

"That Henry S. McCluskey, of Phoenix, County of Maricopa, State of Arizona, be and he is hereby appointed receiver *pendente lite* of all personal and real property of every kind and character of the said defendant, Intermountain Building and Loan Association, a corporation, situate in the state of Arizona or which was situated in the state of Arizona at the time of the filing of the bill of complaint in this suit. . . .

"It is further ordered, adjudged and decreed that upon giving said bond, said receiver shall take possession of all the assets, files, papers, records, documents, moneys, securities, choses in action, books of account and all other property, real and personal or mixed, of the defendant now in the state and district of Arizona and the jurisdiction of this court, and all property in its custody and control pending the final determination of this suit, or until further orders of this court. . . .

"And it is further ordered, adjudged and decreed that pending this receivership, the defendant, its employees, agents and attorneys, and all sheriffs, marshals, creditors and J. A. Malia, be and they are hereby enjoined from interfering with the possession of said receiver; and the said defendant and all persons holding in their possession or under their control, property, real, personal or mixed, belonging to the above named defendant or to the possession of which the receiver is entitled shall forthwith deliver said possession to the receiver. . . .

"It is further ordered, adjudged and decreed that said receiver shall retain possession of said property and continue to discharge the duties of his trust aforesaid until the further order of this court, and from time to time make reports of his doings in the premises, and may from time to time apply to this court for such other and further orders and directions as he may

deem necessary and requisite in the due administration of his trust. . . . "

On April 21st an order was made allowing an appeal from said order appointing a receiver, with a *supersedeas,* to the Circuit Court of Appeals of the Ninth Circuit, in the following language:

". . . 'The petition of the defendant, Intermountain Building & Loan Association, and J. A. Malia, as Bank Commissioner of the State of Utah, in the above entitled cause for an appeal from the decree or order appointing Henry S. McCluskey receiver *pendente lite* or temporary receiver of the property and assets of Intermountain Building & Loan Association in the State of Arizona, and not to remove the same until the further order of this court, is hereby granted, and said appeals are allowed and, upon petitioners filing a bond in the sum of $35,000.00 with sufficient sureties and conditioned as required by law, the same shall operate as a *supersedeas* of said decree and orders, and each of them, made and entered in the above cause, and shall suspend and stay all further operation thereof until the termination of said appeals by the Circuit Court of Appeals for the Ninth Circuit. . . . ' "

The receiver thus appointed did not take physical possession of any of the property of the company pending a decision of the appeal, the latter continuing in possession of its property and transacting business as usual until about the 2d of December, 1935, when, the circuit court of appeals having affirmed the order, *Intermountain Building & Loan Assn.* v. *Gallegos,* 78 Fed. (2d) 972, appointing the receiver, the latter, without further formality, took over the entire assets. In the meantime, and on the 26th of November, 1934, nearly eighteen months after the filing of the suit in the federal court and six months after the appointment of the receiver and the taking of the appeal to the circuit court, but prior to the affirmance of the order aforesaid by the circuit court, plaintiff brought suit

in the superior court of Maricopa county against the company. The record does not show the precise nature of the suit, but, the company having answered, on the 8th day of July a personal judgment was rendered in favor of plaintiff in the sum of $2,000, with interest. The judgment, however, contained the following language:

"In the rendition of this judgment the court is not undertaking to determine any preference as between creditors of the defendant but it does hold that the plaintiff is a general creditor of the defendant association."

On the 10th day of July, 1935, an affidavit in garnishment was filed and a writ of garnishment issued by the clerk, directed to The Valley National Bank, as garnishee, which was duly served. The garnishee filed an answer in which it stated:

"Said The Valley National Bank, at the time said writ was served upon it, and at the time of answering said writ, had in its possession the sum of One Hundred Twenty Thousand Four Hundred Nineteen and 49/100 ($120,419.49) Dollars, which sum was on deposit with The Valley National Bank in the name of Intermountain Building & Loan Association, a Utah corporation;

"That on or about the 23d day of March, 1934, J. A. Malia, Banking Commissioner of the State of Utah, took over said banking account, and said Bank Commissioner is the authorized depositor and the authorized person to check on said account."

The answer of the garnishee was controverted by the plaintiff in so far as it dealt with the alleged action of Malia as banking commissioner, but apparently this issue was never tried out. On December 2d, the receiver having taken possession of all the physical assets of the company, the superior court ordered him substituted in the present action in place of the company, and on December 23d he filed a motion

to quash the writ of garnishment. Plaintiff answered this motion, and on the 19th of February, 1936, the following order was made by the court:

"This matter having been heretofore taken under advisement by the court, it is ordered that motion to quash writ of garnishment is granted in this case."

This last is the order from which this appeal was taken.

The only assignment of error is that the court erred in quashing the writ of garnishment for five reasons set forth in the assignment. We think, however, the most logical way of considering the appeal is on the questions of law raised by the assignment. The first question is as to the effect of the filing of a suit and the appointment of a receiver in one court on the right of a different court to render a judgment in another suit against the defendant in the first one and to enforce it by seizing the property of the defendant. This involves a discussion of the application of the principles of comity. The question has generally arisen in this country in disputes over the relative jurisdiction of the federal and state courts, although occasionally conflicts between two state courts are involved, and the federal decisions are therefore very persuasive on this point. In the case of *Covell* v. *Heyman,* 111 U. S. 176, 4 Sup. Ct. 355, 358, 28 L. Ed. 390, the Supreme Court of the United States said:

"The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity with perhaps no higher sanction than the utility which comes from concord; but between state courts and those of the United States, it is something more. It is a principle of right and of law, and therefore of necessity. It leaves nothing to discretion or mere convenience. These courts do not belong to the same system, so far as their jurisdiction

is concurrent; and although they co-exist in the same space, they are independent, and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that *res* is as much withdrawn from the judicial power of the other as if it had been carried physically into a different territorial sovereignty."

This rule has never been questioned so far as we are aware by any responsible court, the only difference between the authorities being rather in the application of the rule to the facts of the particular case. It appears therefrom that, where one court of competent jurisdiction has taken possession of the *res* involved in an action filed in such court, no other court may interfere with such possession. This rule was elaborated in the case of *Farmers' Loan & Trust Co.* v. *Lake Street Elev. R. Co.,* 177 U. S. 51, 20 Sup. Ct. 564, 568, 44 L. Ed. 667, showing its application not merely to cases where property had actually been seized under judicial process, but also to suits to liquidate insolvent estates, in the following language:

"Nor is this rule restricted in its application to cases where property has been actually seized under judicial process before a second suit is instituted in another court, but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in suits of a similar nature where, in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected."

As was said in *Buck* v. *Colbath,* 3 Wall. (70 U. S.) 334, 341, 18 L. Ed. 257:

"A departure from this rule would lead to the utmost confusion, and to endless strife between courts of concurrent jurisdiction deriving their powers from the same source; but how much more disastrous would be the consequences of such a course, in the conflict of jurisdiction between courts whose powers are de-

rived from entirely different sources, while their jurisdiction is concurrent as to the parties and the subject-matter of the suit.

"This principle, however, has its limitations; or rather its just definition is to be attended to. It is only while the property is in possession of the court, either actually or constructively, that the court is bound, or professes to protect that possession from the process of other courts. Whenever the litigation is ended, or the possession of the officer or court is discharged, other courts are at liberty to deal with it according to the rights of the parties before them, whether those rights require them to take possession of the property or not. The effect to be given in such cases to the adjudications of the court first possessed of the property, depends upon principles familiar to the law; but no contest arises about the mere possession, and no conflict but such as may be decided without unseemly and discreditable collisions."

██ The rule, however, is limited to actions which deal either directly or potentially with specific property or debts, and, when a suit is strictly *in personam,* with nothing more than a personal judgment sought, there is no conflict with a prior action in another jurisdiction either before or after judgment, even though the same issues are to be tried and determined, the reason of course being that the second suit does not oust the jurisdiction of the court in which the first suit was brought, nor does it lead to a conflict of authority. The principle which should be applied in determining whether a suit falls within the rule is laid down in *Harkin* v. *Brundage,* 276 U. S. 36, 48 Sup. Ct. 268, 271, 72 L. Ed. 457, in the following language:

"The principle which should govern in a conflict of jurisdiction like this has been a number of times stated by this court. As between two courts of concurrent and co-ordinate jurisdiction, the court which first obtains jurisdiction and constructive possession of property by filing the bill is entitled to retain it without interference and cannot be deprived of its right to do

so, because it may not have obtained prior physical possession by its receiver of the property in dispute; but where the jurisdiction is not the same or concurrent, and the subject-matter in litigation in the one is not within the cognizance of the other, or there is no constructive possession of the property in dispute by the filing of a bill, it is the date of the actual possession of the receiver that determines the priority of jurisdiction."

■ It would appear from a comparison of all these decisions that, when the federal court appointed a receiver to take possession of all the assets of the company, while plaintiff was entitled to maintain her suit for a personal judgment in the superior court of Maricopa county, she could not enforce any personal judgment against property which was in the possession of the receiver previously appointed by the federal court in the first suit filed. Plaintiff, in substance, concedes that, had a general receiver been appointed and had there been no appeal from the order appointing, with a *supersedeas* bond given, she could not have maintained her writ of garnishment against property in the possession of the receiver. She contends, however, (a) that the authority of a receiver *pendente lite* is so different from that of a general receiver that the rule does not apply, and (b) that the effect of the *supersedeas* bond was to remove the property in question from the jurisdiction of the federal court, so that she was entitled to enforce any judgment obtained in the state court by attachment and garnishment of any property of the company.

■ So far as the first point is concerned, we think it is without merit. The order appointing the receiver gave him full authority to take into his possession all the property of the company, to use every method to preserve the same, subject to the jurisdiction of the court, and enjoined the company or any of its creditors from attempting to interfere with such possession.

Regardless of the name which may have been given to the receiver, his powers in this respect were as broad as language could make them, and we think that, so far as any property in his possession was concerned, it was certainly subject to the general rule above set forth.

■ The second point in regard to the effect of the *supersedeas* is of somewhat greater difficulty. It is urged most strenuously that the effect of this order was to restore the property to the possession of the company, free from any rights of the federal court, as well as of the receiver, and subject to any legal process of the state court in the same manner as though no federal case had ever been filed. There are, it is true, decisions which hold that such is the effect of a *supersedeas* bond in an appeal from an order appointing a receiver, but we think this is not true of Arizona. Our statutes in regard to *supersedeas* are taken substantially from the state of Texas and the appellate courts of that state have passed upon the precise question under discussion, and the Supreme Court of the United States has applied the Texas rule to proceedings very similar in principle to the one involved herein. In the case of *Palmer* v. *State of Texas,* 212 U. S. 118, 29 Sup. Ct. 230, 232, 53 L. Ed. 435, the state brought suit in its own courts to forfeit the permit of the Waters-Pierce Oil Company to do business in that state. A receiver was appointed to take possession of the property of the company, and, immediately after he had filed his bond, an appeal was taken from the order appointing the receiver and a bond given to supersede the receivership. Immediately thereafter a bill was filed against the Waters-Pierce Oil Company in the Circuit Court of the United States for the Eastern District of Texas by a stockholder of the company, asking for the appointment of a receiver for the company to take possession of

its property, so that its business might be wound up, and on the same day the circuit court did appoint a receiver to whom the property of the company was turned over. The receiver appointed by the state court then applied to that court for an order to obtain possession of the property which had been placed in the hands of a federal receiver. The state court refused to make an order directing the federal receiver to surrender possession, but did direct the state receiver to appear before the federal court and urge the rights of the state and the prior jurisdiction of its courts over the property, and to ask for such orders as might be necessary to protect the jurisdiction. The matter finally came before the Supreme Court of the United States, and that court said:

"If the state court had acquired jurisdiction over the property by the proceedings for the appointment of its receiver, and had not lost the same by the subsequent proceedings, then, upon well-settled principles, often recognized and enforced in this court, there should be no interference with the action of the state courts while thus exercising its authorized jurisdiction. The Federal and state courts exercise jurisdiction within the same territory, derived from and controlled by separate and distinct authority, and are therefore required, upon every principle of justice and propriety, to respect the jurisdiction once acquired over property by a court of the other sovereignty. If a court of competent jurisdiction, Federal or state, has taken possession of property, or by its procedure has obtained jurisdiction over the same, such property is withdrawn from the jurisdiction of the courts of the other authority as effectually as if the property had been entirely removed to the territory of another sovereignty. *Wabash R. Co.* v. *Adelbert College*, 208 U. S. 38, 28 Sup. Ct. 182, 52 L. Ed. 379, and previous cases in this court, cited therein at page 54."

The question was, What effect did the courts of Texas give to a *supersedeas* bond on an appeal from

an order appointing a receiver in the state court? After discussing the Texas decisions, the Supreme Court of the United States said as follows:

"The supreme court of Texas has therefore decided in this case, as we think it had held in its former decisions, cited in the opinion of Judge Shelby, speaking for the court of appeals in this case, that the effect of the appeal and bond was merely to suspend the order appointing the receiver pending the determination of the appeal.

"In this attitude of affairs, had the circuit court of the United States authority to take possession of the property under the bill filed in that court for the appointment of a receiver?

"We think the law of this court is well established to be that jurisdiction over the property was acquired by the state courts when the receiver was appointed, the judicial process served, and the receiver duly qualified, although the state receiver had not taken actual possession of the property. This principle was recognized in *Farmers' Loan & T. Co.* v. *Lake Street Elev. R. Co.*, 177 U. S. [51] 59, 20 Sup. Ct. 564, 44 L. Ed. 670, in which this court said:

" 'The possession of the *res* vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and, for the time being, disables other courts of co-ordinate jurisdiction from exercising like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons. . . . The rule has been declared to be of especial importance in its application to Federal and state courts. [Citing cases.]'

"If this rule is not applied, a court of competent jurisdiction, which, by the law of its own procedure, has acquired jurisdiction of property, may find itself, as in this case, after final judgment, maintaining its right over the property, at the conclusion of the litigation deprived of the subject-matter of the suit. Indeed, this case would be an apt illustration of that situation. The courts of Texas have sustained the right to the receivership, and have held it was only sus-

pended pending the appeal; but, when it comes to enforcing the right to administer the property, if the Federal receivership is maintained, the court of original jurisdiction finds itself stripped of the property, and the same being administered in another court which acquired its dominion over the property after it had become subject to the state jurisdiction.''

We think the logic of the opinion is unanswerable. If we are to permit the plaintiff herein to enforce her garnishment against the property of the company, the federal court, which originally had jurisdiction of the case for the purpose of liquidating the company, may proceed to judgment and determine how the assets of the company shall be distributed, but find that those assets have been dissipated through proceedings in the state courts. Such a situation would be in violation of all principles of comity between courts. We hold, therefore, that the federal court, having first obtained jurisdiction of the *res* by the filing of the suit and appointment of the receiver, was not divested of such jurisdiction by the appeal and *supersedeas,* but retained the same so far as interference with its possession by any court was concerned. It is true that the company, pending the determination of the appeal, had the right to protect its property by every proper means, but no creditor had the right to levy upon such property as the result of a personal judgment secured in some other than the federal courts. There is no question involved as to the validity of the judgment obtained by plaintiff in the state court. She has a valid judgment against the company as a general creditor, and she may present her claim to the federal court during the liquidation of the company, and that court will no doubt give full faith to the judgment of the state court and secure any rights which she may have as against the assets of the company as a general creditor, but she may not, by reason

of her proceedings, claim a preferential right which will interfere with the proper jurisdiction of the federal courts.

We have considered the other points raised by plaintiff, but think it unnecessary to discuss them.

The order appealed from is affirmed.

McALISTER, C. J., and ROSS, J., concur.