[Civil No. 3853.   Filed April 12, 1937.]

[67 Pac. (2d) 470.]

C. C. FAIRES, Petitioner, v. ANA FROHMILLER, as State Auditor of the State of Arizona, Respondent.

Messrs. Townsend & Jenckes, Mr. George M. Hill, for Petitioner.

Mr. Joe Conway, Attorney General, Mr. E. G. Frazier, Special Assistant Attorney General, for Respondent.

LOCKWOOD, J.—This is an original proceeding in this court by C. C. Faires, hereinafter called petitioner, on his own behalf and that of twelve others, against Ana Frohmiller, as Auditor of the State of Arizona, hereinafter called respondent, asking that she be directed to issue to him certain warrants. The facts upon which the petition is based are in nowise in dispute, and the question presented to us is solely one of law. We state these facts as follows:

Petitioner and those whom he represents were elected at the general election in 1934, one by the electors of each of the various counties of the state of Arizona, excluding the county of Maricopa, as judge of the superior court. At the same election, there were chosen by the electors of Maricopa county, three judges of the superior court. Under the Constitution of Arizona the term of office of each one of these judges began the first Monday in January, 1935, and extended until the first Monday in January, 1939. In the year 1936, there was chosen at the general election of that year one judge of the superior court by

the electors of Maricopa county, whose term of office commenced on the first Monday of January, 1937, and expired the first Monday in January, 1941. In the month of November, 1936, the twelfth legislature of the State of Arizona, at a special session, increased the salaries then provided for the various judges of the superior courts of the state, to take effect in two equal installments, to an amount equal to that at which such salaries had been fixed before the act of the ninth legislature which had reduced the then existing salaries twenty per cent, thus in effect restoring such salaries to the pre-depression level. The act was an emergency one and by its terms became law December 31, 1936. Thereafter, and on the 17th of February, 1937, petitioner and his assignors filed claims with respondent for the difference between the amount claimed to be due each of them as salary, on the basis of the salary schedule fixed by the ninth legislature in 1933 (chap. 41), and that fixed by the twelfth legislature in 1936, respondent having previously issued to them warrants for their salaries from the first Monday in January, 1937, to the 15th day of February, 1937, on the basis of the 1933 salary schedule.

It is the contention of petitioner that the new salary schedule adopted by the twelfth legislature, in November, 1936, became effective as to him and each of his assignors on the first Monday of January, 1937. It is the position of respondent that it does not become effective as to them unless and until they are re-elected and qualified for the offices which they now hold. The contentions of both petitioner and respondent are based upon their respective interpretations of section 17, part 2, article 4, and section 5, article 6, of the Constitution of Arizona. The first-named section, as originally adopted, reads as follows:

"The Legislature shall never grant any extra compensation to any public officer, agent, servant, or con-

tractor, after the services shall have been rendered or the contract entered into, nor shall the compensation of any public officer be increased or diminished during his term of office."

At the general election held on the 4th day of November, 1930, this section was amended by adding thereto the following provision:

"Provided, however, that when any legislative increase or decrease in the compensation of the members of any court, board or commission, composed of two or more officers or persons, whose respective terms of office are not coterminous, has heretofore or shall hereafter become effective as to any member of such court, board, or commission, it shall be effective from such date as to each of the members thereof."

The purpose and effect of this amendment cannot be stated more succinctly and clearly than the language of the amendment itself.

Section 5, article 6, is the one which creates the superior court or courts of the state. It reads, so far as the creative part is concerned, as follows:

"There shall be in each of the organized counties of the State a superior court, for which at least one judge shall be elected by the qualified electors of the county at the general election."

Petitioner's argument in support of his claim may be summarized as follows: There is within the state of Arizona one and only one superior court, which is composed at the present time of seventeen judges, four of whom are elected by the electors of the county of Maricopa, and the others, one by the electors of each of the other counties of the state. One of these judges, the Honorable G. A. Rodgers of Maricopa county, was elected in November, 1936, and before his new term of office commenced on the first Monday of January, 1937, the legislature increased the salaries of all of the seventeen judges. By the terms of the Constitu-

tion, as originally written, such salary increases would have been effective on the first Monday of January, 1937, only as to Judge Rodgers, the other sixteen judges being compelled to wait for their increases until after their re-election. But, by the amendment of 1930, when Judge Rodgers' increased salary became effective, the increases granted each of the other sixteen judges took effect also.

It is respondent's position that there are in the state of Arizona fourteen different and independent superior courts, one only of which is composed of two or more officers or persons, towit, the superior court of Maricopa county, and that such being the case, the amendment to section 17, *supra*, affects only the judges of the superior court of the county of Maricopa, the judges of the other thirteen courts being governed by the provisions of the section as it was originally adopted. We have, therefore, as determinative of the case a very clear and narrow question, to wit, is there but one superior court in the state of Arizona, composed of seventeen members, or are there fourteen superior courts, one of which has four members, and the other thirteen one member each. This question will be decided by the construction of our constitutional provisions in regard to the judiciary. Article 6 of the Constitution deals with the judicial department of government. The provisions referring to superior courts, so far as they bear directly on their *creation,* read as follows:

"Section 1. The judicial power of the State shall be vested in a supreme court, superior courts, justices of the peace, and such courts inferior to the superior courts as may be provided by law."

"Section 5. There shall be in each of the organized counties of the State a superior court, for which at least one judge shall be elected by the qualified electors of the county at the general election."

If there was nothing further in the Constitution in regard to such courts, there can be no question that

there is more than one superior court within this state, for section 1 refers to such courts in the plural, and section 5 (the provision which actually creates them) says, "There shall be in *each* of the organized counties of the State *a* superior court." (Italics ours.) It would seem that it was impossible to declare more clearly than the language just quoted, since there were fourteen counties in the state of Arizona at the time our Constitution was adopted, there were fourteen separate superior courts established by that Constitution. Petitioner, however, points out that in many other parts of article 6, *supra*, the reference to this judicial tribunal is in the singular and not in the plural, and therefore argues that there is but one superior court in the state. It is true that in article 6 the language used is sometimes "superior court" and sometimes "superior courts." We think, however, upon examination it appears that in every case where the singular word is used, the context shows that the term applies equally to one court and to a number of courts in the disjunctive, while whenever the context shows that *all* the superior courts of the state (whether one or more) are referred to conjunctively, the plural word is invariably found.

Our Constitution, so far as its judicial features were concerned, was evidently modeled on similar provisions of the Constitutions of California and Washington. Section 6, article 6, Constitution of California, referring to the superior courts, reads in part as follows:

"There shall be in each of the organized counties, or cities and counties, of the state, a superior court, for each of which at least one judge shall be elected by the qualified electors of the county, or city and county, at the general state election."

Section 5, article 4 of the Constitution of Washington, is, in part, in the following language:

"There shall be in each of the organized counties of this state a superior court, for which at least one judge shall be elected by the qualified electors of the county at the general state election."

And most of the other provisions of these two Constitutions in regard to the jurisdiction and procedure in superior courts is very similar in language and almost identical in meaning with the other provisions of our Constitution in regard to these courts. The decisions from these states, therefore, so far as they declare or indicate the views in those jurisdictions on the question at issue, are very persuasive. It is true that there is not a single decision, so far as we are aware, where the precise question at issue, to wit, whether there is but one or more than one superior court in each of these states, has been specifically raised and determined. There are many cases, however, which assume as a matter of course that there are many superior courts in each of these states, and not one which implies there is but one such court. Probably the most positive declaration on the subject is found in the case of *State ex rel. Onstine* v. *Bartlett,* 131 Wash. 546, 230 Pac. 636. The following language was used:

"The court is one entity of which there may be several judges, and, the Legislature having been given power to designate the number of judges constituting a court in each county, there seems no reason why the same body may not enact such reasonable procedure as it sees fit for the election of these several judges. The Supreme Court of Iowa, in *Schaffner* v. *Shaw,* 191 Iowa 1047, 180 N. W. 853, said:

" 'The judges are but organs of the court, the conduits through which it speaks. The court and judge are by no means a unit. . . . The increase or diminution of the number of judges . . . is of the . . . judges, but not of court. . . . '

"If the relator's argument is correct, the superior court in each county, as provided by the Constitution, is a single office, and the various acts which increase

the number of judges in the counties of the state would have been unconstitutional, as providing more courts than called for by the Constitution. The true interpretation is that the court in each county is a single entity, of which there are as many officers as there are judges, provided by law. In 15 C. J. 869, it is said:

" 'It frequently happens that a court is divided into a number of different departments, parts, or divisions, and the Legislature has power so to regulate the business of a court, in the absence of any constitutional prohibition. But the court remains a unit, notwithstanding such a division.' "

In *Re Salary of Superior Court Judges,* 82 Wash. 623, 144 Pac. 929, the general question of salaries in superior courts was discussed, and the entire language of the opinion shows that it was assumed that there was a superior court in each county. To the same effect are the cases of *Hindman* v. *Boyd,* 42 Wash. 17, 84 Pac. 609; *State* v. *Holmes,* 12 Wash. 169, 40 Pac. 735, 41 Pac. 887; *Demaris* v. *Barker,* 33 Wash. 200, 74 Pac. 362; *State ex rel. Foster-Wyman Lumber Co.* v. *Superior Court,* 148 Wash. 1, 267 Pac. 770.

In the case of *McMorry* v. *Superior Court,* 54 Cal. App. 76, 201 Pac. 797, certain suits were filed in the superior court of Sutter county. These actions were later transferred to the superior court of Sacramento county, and later certain other suits involving the same subject-matter were filed in Sutter county. A contention arose over which court had jurisdiction of the property affected by all of the suits. It was argued that when two different courts of concurrent jurisdiction had before them, in different actions, matter which involved the control and dominion of certain property involved in both litigations, that the court which first acquired jurisdiction, under the rules of comity drew to itself the exclusive right to dispose of such property. That this is the general rule is beyond question. *Forst* v. *Intermountain Bldg. & Loan Assn.,*

*McCluskey, Receiver, ante,* p. 246, 65 Pac. (2d) 1379. The Supreme Court of California assumed as a matter of course, that the superior court of Sutter county and the superior court of Sacramento county were two different courts of concurrent jurisdiction. In the case of *In re Guardianship of Danneker,* 67 Cal. 643, 8 Pac. 514, 516, a petition for letters of guardianship was filed in the superior court of San Francisco county. Later a similar petition was filed in the superior court of Alameda county, and the Supreme Court of California again held that they were two different superior courts, and that after the superior court of San Francisco county had taken jurisdiction the superior court of Alameda county could not oust it of that jurisdiction by another and similar proceeding. The court stated:

"It is apparent there cannot be two guardianships in two different courts at the same time. Letters will be issued, if necessary, by the court of the county where it may be legally determined the child resides."

In the case of *In re Dowdall,* 183 Cal. 348, 191 Pac. 685, the superior court of San Francisco county had taken jurisdiction in probate of the estate of John Nuttall. There was a trust created by the will of the decedent, and the beneficiary brought a suit in the superior court of Alameda county to enforce certain alleged provisions of the trust. The Supreme Court again held that the two courts were different courts of concurrent jurisdiction, and the court having primary jurisdiction of the estate would retain it. Other California cases which imply, without deciding, that the superior courts of the counties are different and independent courts are *Kings County* v. *Johnson,* 104 Cal. 198, 37 Pac. 870; *Burris* v. *Kennedy,* 108 Cal. 331, 41 Pac. 458; *Cottrell* v. *Cottrell,* 83 Cal. 457, 23 Pac. 531; *People* v. *Wong Bin,* 139 Cal. 60, 72 Pac. 505.

We think there can be no question that there are in the state of Arizona fourteen different superior courts with concurrent jurisdiction, and not one superior court with seventeen different judges composing such court.

Petitioner devotes a considerable portion of his brief to a discussion of the injustice of the position taken by respondent. He asks with great earnestness why all of the other officers covered by the salary restoration bill adopted by the twelfth legislature, in November, 1936, should be given the benefit thereof immediately, while he and his assignors should be compelled to wait two years. The argument, when considered merely from the standpoint of abstract justice, has great merit, and were it not for the constitutional provision, we have no doubt that it would be legally correct. Unfortunately, however, for this contention the Constitution has spoken explicitly on the subject. Whether justly or not, it has provided that no public official may have his salary increased nor diminished during his term of office, with the one exception that when a board, court, or commission is composed of two or more members whose terms of office are not coterminous, an increase or decrease which becomes effective as to one becomes effective at the same time as to all. When a proviso makes an exception to a general rule, one who claims the benefit of that proviso must bring himself within its terms. Since the petitioner and his assignors are not members of a court composed of two or more members whose terms are not coterminous, but are members each of a separate court consisting of but one member, they are not within the terms of the proviso, and cannot claim its benefits.

The alternative writ of *mandamus* is quashed.

McALISTER, C. J., and ROSS, J., concur.