392 P.2d 778

John W. COLVIN and Martin L. Colvin, a co-partnership doing business as C C Concrete Pipe Co., Appellants,

v.

SUPERIOR EQUIPMENT COMPANY, an Arizona corporation, Appellee.

No. 7147.

Supreme Court of Arizona,

In Division.

June 3, 1964.

James E. Flynn, and Allen K. Perry, Phoenix, for appellants.

Langmade & Sullivan, Phoenix, for appellee.

BERNSTEIN, Justice.

Plaintiff-appellee brought this action against defendant-appellant to recover a deficiency as authorized by A.R.S. § 44–322, arising from the repossession sale of a power shovel under a conditional sale contract. The defendant filed an affirmative defense and counterclaim, based primarily on the allegation that the shovel was not new, as represented, but had a defectively welded replacement part which had broken down in operation causing a serious accident on June 6, 1957. This accident delayed performance of the defendant's construction contract for dam work near Show Low, Arizona. After the accident the defendant repaired the shovel and used it until the job was completed. Plaintiff acquiesced

in the completion of the job and delayed repossession. Physical repossession with the buyer's consent took place in September 1957.

The defendant also alleged breach of express and implied warranties. The case was tried to the court without a jury. No findings of fact were requested or made. The court rendered judgment for the plaintiff in the full amount of his claim. Defendant's counterclaim was denied. Defendant has appealed.

The defendant's case depends in part upon his allegation of fraud, which he bases on the fact that the shovel was described as "new" both in the original contract of November 23, 1956, and in the representations of the plaintiff and his salesmen. Defendant further contends that under A.R.S. § 44–215 (Uniform Sales Act, § 15) there was an implied warranty of fitness for the purpose for which the shovel was sold.

The shovel was new when it was delivered by the manufacturer to the plaintiff. It was the best type of heavy duty shovel, well adapted to the rough work involved in defendant's job. A witness for the defense, a former salesman for the plaintiff, testified that a small part, "the boom hinge pin," or "sway brace strap" was removed at his direction and shipped to another customer to make emergency repairs, while the shovel in question was in plaintiff's yard awaiting delivery to defendant. A used and partially welded sway brace strap was substituted for the original new part. There was no testimony as to when the replacement was made. The credibility of defendant's witness was attacked, and on cross-examination he failed to remember, among other things the name of the customer to whom the part was shipped. The court evidently did not believe this vital testimony in support of defendant's case and it properly was within the trial judge's discretion to refuse credence to this witness. Leaving out this testimony, there is only one other item of evidence tending to show whether the original part was replaced by plaintiff or defendant. At the time of delivery of the shovel to the job, when it was necessary to reassemble it, a truck driver then employed by defendant testified that he noticed the welded part, and when shown the broken part identified it as the one he had observed at the time of delivery. No one else who testified noticed the welded part at any time prior to the accident. Plaintiff's counsel suggests that it may have been removed by an employee of defendant after delivery to defendant but there is no direct evidence to support this supposition. The defective part itself was introduced in evidence. It is not denied that the defective welding was the cause of the accident.

The sway brace strap was small, valued at less than $20. When it broke at the weld,

the boom fell upon the cab, crushing it and doing serious damage. The operator jumped from the cab, and escaped injury. It was necessary to use the shovel to complete the job and the defendant made necessary repairs, even though he claimed the defect which caused the damage was covered by warranties. This claim was denied by the plaintiff on the ground that the express warranties had expired. Any express warranties under the purchase contract were for six months only, and had expired in May.

The contract sued on was not the original contract of November 23, 1956, but a substituted contract entered into May 3, 1957, after a prior default by the defendant. The price in the November contract was $51,677.21. The May contract shows a sales price of $38,403.50 which was the balance due at that time. No payments were made on the May contract. All payments from the defendant to the plaintiff were credited to other accounts by agreement of the parties. The word "new" was omitted in the May contract, but this was done because in May the shovel was no longer "new" and the change was not intended as a correction of the original description.

Defendant's assignments of error raise the following questions:

1. Was there fraud on the part of the plaintiff?

2. Was there a breach of an implied warranty?

3. Was there a valid rescission of the contract?

4. Was there a waiver by defendant of the breach of an implied warranty?

5. Was plaintiff entitled to counsel fees?

6. Was the open account proved?

Where no findings of fact are requested and the trial judge, sitting without a jury, does not find fraud, we are bound to sustain that action if the record shows that as to any of the essential elements of fraud the judge was reasonably justified in finding that the party alleging fraud failed to meet the standard of clear and convincing proof. We must presume the judge found the necessary facts to support his judgment, provided there is evidence in the record to support it. Cullison v. Pride O'Texas Citrus Association, 88 Ariz. 257, 355 P.2d 898. The evidence when viewed in this light sustains the action of the trial judge on the issue of fraud.

On the issues other than fraud, where no findings of fact are requested, "if we can on any reasonable view of the evidence deduce therefrom facts which, on any theory of the law, would sustain the judgment, we must affirm it." Babbitt & Cowden Live Stock Co. v. Hooker, 28 Ariz. 263, 266, 236 P. 722, 723.

We will now consider implied warranty, rescission and waiver together. It is not denied that the express warranties expired at the end of six months, and were no longer in force. There is in every sales contract, however, an implied warranty provided for by A.R.S. § 44–215(1) (Uniform Sales Act, § 15):

"§ 44–215. Implied warranties of quality

"Subject to the provisions of this chapter and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"1. Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

Plaintiff contends that this subsection does not apply because of subsection 3, A.R.S. § 44–215, which reads:

"If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed."

However, the welded part is not a defect which surface examination would reveal. The part is in evidence, and we have examined it. Defendant did look at the shovel, but did not conduct a minute examination. One of his employees testified that he did notice a weld at the time of delivery, but thought nothing of it and said nothing about it at the time. So far as the warranty of fitness is concerned, a properly welded part would have fulfilled this warranty as well as a new part. No one realized that the weld was in fact a "tack" and could not be expected to stand the heavy stress put on the power shovel.

In Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, the California Supreme Court was considering the implied warranty made by the manufacturer to the consumer. Its statement, 27 Cal.Rptr. at page 701, 377 P.2d at page 901, is equally applicable to the implied warranties made by a dealer to his customer. The California court said:

" * * * Implicit in the machine's presence on the market, however, was a representation that it would safely do the jobs for which it was built. Under these circumstances, it should not be controlling whether plaintiff selected the machine because of the statements in the brochure, or because of the machine's own appearance of excellence that belied the defect lurking

beneath the surface, or because he merely assumed that it would safely do the jobs it was built to do. * * * To establish the manufacturer's liability it was sufficient that plaintiff proved that he was injured while using the Shopsmith in a way it was intended to be used as a result of a defect in design and manufacture of which plaintiff was not aware that made the Shopsmith unsafe for its intended use."

We do not have here a case where an experienced man buys used equipment in reliance on his own judgment that it will serve his purposes, or a case such as Ray v. First National Bank of Arizona, 88 Ariz. 337, 356 P.2d 691, where it was known that modifications must be made before the machinery would do the required work.

■ The defendant here purchased "new" equipment, from an authorized dealer, on the open market. The rules for determining whether warranties are implied are the same, whether the implied warranty is urged by an injured man as the foundation of accident liability, or by the purchaser to avoid a contract. In both this case and the California case, the damage was done by a "defect lurking beneath the surface." A.R.S. § 44–215(3), providing that there is no implied warranty if there is inspection, has no application to this case, since no surface examination would have revealed the defect inside the weld which

amounted to a "tack". Although the testimony is contradictory and confusing, an examination of the exhibit itself makes clear the nature of the defect. The fact that this defect was unknown to any responsible officer of the seller and that the seller was not negligent is not ascertaining it, does not negate the existence of the implied warranty. Canadian Fire Insurance Company v. Wild, 81 Ariz. 252, 304 P.2d 390. See also Fraley v. Ford, 81 Ariz. 268, 304 P.2d 1068; Davidson v. Wee, 93 Ariz. 191, 379 P.2d 744; Crystal Coca-Cola Bottling Co. v. Cathey, 83 Ariz. 163, 317 P.2d 1094.

Plaintiff contends that the warranties, either express or implied, were dependent on proper operation of the shovel. He testified that his employees had observed the boom operated at a 30 degree angle, and that it should have been operated at 45 degrees. The brochure of the manufacturer, which was introduced into evidence, shows that operation as low as a 40 degree angle was contemplated by the manufacturer. The angle at which the boom was being operated at the time the defectively welded part broke does not appear.

■ It was within the discretion of the trial court to determine as a fact, that the defectively welded part, which held up from November until June, would have been satisfactory and met the terms of the implied warranty, if the shovel had been prop-

erly operated and the boom kept at a permissible angle at all times.

The six months' limitation on express warranties has no bearing on the time limit for the implied statutory warranty. Generally the buyer is entitled to a reasonable time under the circumstances to discover defects. Pratt-Gilbert Co. v. Hildreth, 24 Ariz. 141, 207 P. 364. Under a statute identical with ours (Uniform Act, § 15) the Maryland court has said that while generally a warranty relates only to the time of the sale, in some cases there must be allowed a reasonable time for discovery of defects only ascertainable by use. Euzent v. Barrash, 180 Md. 451, 25 A.2d 462, 465. Here the seriousness of the defect could only be discovered by use. The question of what constitutes a reasonable time, however, is one of fact, determined here against the plaintiff by the trial judge.

Plaintiff also contends that if defendant does have any rights as a result of the breach of the implied warranty, these rights were lost by the defendant's course of action, or inaction, after the accident of June 6th. Defendant notified plaintiff immediately. Plaintiff investigated, denied liability on the grounds that the warranties had either expired or were not existent, and suggested that the manufacturer might be liable. Defendant refused to give plaintiff possession of the broken part so that it could be returned to the manufacturer.

After plaintiff refused to do anything, defendant repaired the shovel, and completed its contract. In September, after the work was done, defendant told plaintiff to come and get the shovel, and defendant's employees helped to load the shovel. The repossession was not resisted.

Defendant contends that this amounts to a rescission and relieves it of liability, and entitles it to recover the amount originally paid. Plaintiff contends it is a ratification, and obligates defendant to pay the purchase price regardless of what rights defendant may have had if it had asserted them immediately after the accident.

Unless there is a satisfactory explanation for the delay, a buyer may not discover a breach of implied warranty in June, and wait until September to rescind the contract. Defendant, however, urges that he acted under "business compulsion." The broken shovel was needed by the defendant to complete his job. This is the only basis on which defendant claims business compulsion."

The "business compulsion" doctrine is not applicable to the facts in this case. The doctrine of "business compulsion" is merely the modern form of the common law doctrine of duress. It must be shown that the person claiming "business compulsion" agreed to an illegal exaction. It is normally used to justify recovery of a

voluntary payment made under duress. Ramp Buildings Corporation v. Northwest Bldg. Co., 164 Wash. 603, 4 P.2d 507, cases collected, Note 79 A.L.R. 655; Sistrom v. Anderson, 51 Cal.App.2d 213, 124 P.2d 372, a case involving an Arizona contract in which the California court applied Arizona law. Defendant in the instant case did not fear any wrongful act by plaintiff, when he proceeded to repair the shovel. Plaintiff merely denied liability to repair the shovel and denied the existence of any applicable warranty. The situation is the same as the "threat to stand suit" involved in Sistrom. In addition, the existence of "business compulsion" has been held to be a question for the trier of fact, Inland Empire Refineries v. Jones, 69 Idaho 335, 206 P.2d 519, and we are not at liberty to overturn the trial judge's finding in favor of the plaintiff on this issue. Babbitt & Cowden Live Stock Co., supra.

■ The retention of the shovel after the accident and until the completion of the job did result in the waiver of the right to rescind the sale and to recover back the down payment. As we said in Pratt-Gilbert Co. v. Renaud, 25 Ariz. 79, 95, 213 P. 400, 406:

"* * * The continued use of goods for considerable time for convenience or profit after full knowledge of the existence of breach of warranty is a waiver of the right to rescind the sale."

In addition the record raised a question of valuation of the repossessed property which we believe requires special comment. The repossession was conducted in accordance with the requirements of A.R.S. § 44–301 to § 44–330, the Uniform Conditional Sales Act, which was adopted by Arizona in 1919. At the sale conducted under A.R.S. § 44–320, the plaintiff bid $19,956. This bid was the only one received, and the shovel was sold to plaintiff for that price. The plaintiff testified that this figure represented his estimate of the fair value of the shovel at that time. Evidence was admitted that the plaintiff resold the shovel for $38,900. A trade-in allowance of $22,000 was given to make this resale possible. There were expenses of $1,793.96 for repairs and $556.87 for steam cleaning and polishing. The plaintiff testified there was an over-allowance on the trade-in of about $5,000, but a definite figure could not be given because the trade-in had not been sold at the time of trial.

■ The figure bid by the original seller at his own resale is not conclusive on the issue of fair market value or the amount which the purchaser shall be allowed in computing a deficiency. The seller must secure the fair market value or bid it himself at the sale and give the buyer credit for this amount. Maestro Music, Inc. v. Rudolph Wurlitzer Company, 88 Ariz. 222, 354 P.2d 266. Defendant does not contend

**122**

that the verdict is excessive in the light of this testimony, and it is unnecessary to give further consideration to this matter.

 Defendant argues that the court erred in allowing attorney's fees to the plaintiff. The general rule is that attorney's fees may be allowed only when provided for by statute or contract. In re Balke's Estate, 68 Ariz. 373, 206 P.2d 732. The Uniform Conditional Sales Act does not mention "attorney's fees." We have denied attorney's fees in a conditional sales case where there was no contractual authorization, O. S. Stapley Co. v. Rogers, 25 Ariz. 308, 216 P. 1072. In the present case, however, the contract provides:

> "Purchaser agrees to pay all costs of collecting any amount or of enforcing any of Seller's rights under this contract, including, without limiting the generality of the foregoing, a reasonable attorney's fee if this contract be placed in the hands of an attorney by Seller, no matter whether suit be brought or not, and also including the costs to Seller of the time and services of any of Seller's employees in making collection."

A.R.S. § 44–326 invalidates waiver of the protection given the buyer by certain sections of the Act, but the deficiency judgment section (A.R.S. § 44–322) is not listed. A *reasonable* attorney's fee may be regarded as an allowable "expense of retaking" as that phrase is used in A.R.S. § 44–321 and A.R.S. § 44–322, if it is so provided in the contract. See In re Seaboyer, 116 F.Supp. 780 (D.C.Mass.), affd., Millen v. General Motors Acceptance Corp., 210 F.2d 654 (1st Cir.) Attorney's fees through the repossession sale and transfer of title back to the seller are contemplated by the statute. The contract here extends the right to "costs of collecting" which include attorney's fees to the time of trial of this action.

The amount alleged to be due on open account, was reduced at the trial, and the reduced amount, supported by plaintiff's testimony and by vouchers introduced into evidence, was properly included in the verdict.

The judgment is affirmed.

UDALL, C. J., and STRUCKMEYER, J., concur.