751 P.2d 509

Kenneth E. BRYANT, Jr., a single
man, Plaintiff,

v.

CONTINENTAL CONVEYOR & EQUIP-
MENT CO., INC., a foreign corporation,
and Lummus Industries, Inc., a foreign
corporation, Defendants.

No. CV–86–0525–CQ.

Supreme Court of Arizona,
In Banc.

Feb. 24, 1988.
Reconsideration Denied April 5, 1988.

**194**

Haralson, Kinerk & Morey, P.C. by Carter Morey, Denneen L. Peterson, and Timothy J. Cranshaw, Tucson, for plaintiff.

Chandler, Tullar, Udall & Redhair by Keith W. Kroese, Tucson, for defendant, Continental Conveyor and Equipment Co., Inc.

Teilborg, Sanders & Parks, P.C. by David J. Damron and Kevin L. Beckwith, Tucson, for defendant, Lummus Industries, Inc.

Arizona Trial Lawyers Ass'n, Langerman, Begam, Lewis and Marks by Amy G. Langerman, Phoenix, amicus curiae.

Phoenix Ass'n of Defense Counsel, Gallagher & Kennedy by W. Charles Thomson III and Judith A. Morse, Phoenix, amicus curiae.

CAMERON, Justice.

## I. JURISDICTION

Judge Richard M. Bilby of the United States District Court for the District of Arizona has certified a question of law to this court pursuant to A.R.S. § 12–1861 and Ariz.R.S.Ct. 27, 17A A.R.S.

## II. QUESTION

The question of law certified to this court is:

1. Whether the twelve year Statute of Repose Limitations portion of A.R.S. § 12–551 is unconstitutional under Article 18, § 6 and the due process/equal protection divisions of the Arizona Constitution when the machine involved in the injury was distributed for use more than 12 years prior to the injury?

The facts agreed to by the parties for the purpose of this certification are as follows:

A. The plaintiff was injured while operating a cotton gin that was distributed for ultimate use or consumption more than 12 years before plaintiff's action accrued.

B. Specifically, plaintiff was injured on 11 December 1983, while operating a Hardwick–Etter Hi–Capacity Roller Gin at Strebor Gin, Bowie, Arizona.

C. The gin was sold and distributed to Strebor in the summer of 1971.

Petitioner filed an action against successors defendant manufacturer and others in the U.S. District Court, District of Arizona, alleging negligence, gross negligence and strict products liability. Defendants filed an answer as to the question of strict products liability alleging as an affirmative defense that the Arizona statute of repose, A.R.S. § 12–551, was applicable to products liability actions. Upon motion of the parties, the federal court certified the question to this court to determine the constitutionality of the statute.

In order to answer the certified question, we must determine whether A.R.S. § 12–551 violates:

1. Arizona Constitution Article 18, § 6;
2. Arizona's Equal Protection Clause; or
3. Arizona's Due Process Clause.

## III. IS STRICT PRODUCTS LIABILITY A RIGHT OF ACTION PROTECTED BY ART. 18, § 6 OF THE ARIZONA CONSTITUTION?

The Arizona Constitution provides:

The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation.

Ariz. Const. art. 18, § 6. The statute in question provides:

A product liability action as defined in § 12–681 shall be commenced and prosecuted within the period prescribed in § 12–542, except that no product liability action may be commenced and prosecuted if the cause of action accrues more than twelve years after the product was first sold for use or consumption, unless the cause of action is based upon the negligence of the manufacturer or seller or a breach of an express warranty provided by the manufacturer or seller.

A.R.S. § 12–551.

The doctrine of strict products liability in tort did not exist at common law when our constitution and art. 18, § 6 was adopted in 1912.

The first case to apply a tort theory of strict liability generally was Greenman v. Yuba Power Products, Inc., in California in 1963. That decision and the final acceptance of § 402A of the Second Restatement of Torts by the American Law Institute in 1964 were immediately relied upon for the adoption of strict liability in tort throughout the country.

W. PROSSER & R. KEETON, The Law of Torts § 98 at 694 (5th Ed.1984). Strict products liability was not adopted by this court until the cases of *O.S. Stapley v. Miller*, 103 Ariz. 556, 447 P.2d 248 (1968), and *Shannon v. Butler Homes, Inc.*, 102 Ariz. 312, 428 P.2d 990 (1967), though there had previously been dicta to that effect. *See Colvin v. Superior Equipment Co.*, 96 Ariz. 113, 392 P.2d 778 (1964); *Nalbandian v. Byron Jackson Pumps, Inc.*, 97 Ariz. 280, 399 P.2d 681 (1965). Strict *products* liability was recognized by statute in 1978. A.R.S. § 12–681 et seq; *Kellogg v. Willy's Motors Inc.*, 140 Ariz. 67, 680 P.2d 203 (App.1984); *Salt River Project v. Westinghouse Elec.*, 143 Ariz. 437, 694 P.2d 267 (App.1983). It thus appears that both the case law and the statute creating a cause of action for strict products liability came into existence well after the adoption of the Arizona Constitution and art. 18, § 6.

Petitioner contends, however, that art. 18, § 6 applies to a cause of action for strict products liability, as well as the right to recover damages for negligence or breach of warranty. Admittedly, we have held that art. 18, § 6 protects actions for negligence and breach of warranty and extends to all actions recognized at common law at the time of the article's adoption. *Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 9, 18, 730 P.2d 186, 195 (1986). We have not, however, extended the protection of art. 18, § 6 to strict products liability. The legislature evidently recognized this difference when it did not include negligence and breach of warranty in the statute of repose and applied the statute only to strict products liability.

We hold that the statute of repose, A.R.S. § 12–551, is not an abrogation of a substantive right of action protected by art. 18, § 6 because the tort of strict products liability did not exist at the time the constitutional provision was adopted. We find no violation of art. 18, § 6 of the Arizona Constitution by A.R.S. § 12–551.

## IV. EQUAL PROTECTION

Our state constitution provides:

No law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall

not equally belong to all citizens or corporations.

Ariz. Const. art. 2, § 13.

Three tests are available to determine the constitutionality of a statute under an equal protection analysis. *Kenyon v. Hammer*, 142 Ariz. 69, 78, 688 P.2d 961, 970 (1984).

**"Strict Scrutiny"**

Under this method a discriminatory statute may be upheld only if there is a "compelling state interest" to be served and the regulation is "necessary" to achieve the legislative objective. *See San Antonio Independent School Dist. v. Rodriquez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed. 2d 16 (1973); *Arizona Downs v. Arizona Horsemen's Foundation*, 130 Ariz. 550, 555, 637 P.2d 1053, 1058 (1981).

Generally, this analysis is confined to those cases in which the statute imposes a burden upon a "suspect" classification (e.g., race or religion) or impinges upon and limits a "fundamental right." Moreover, the fundamental rights factor only exists when the rights affected are "explicitly or implicitly guaranteed by the Constitution." *San Antonio Independent School Dist. supra*, 411 U.S. at 33–34, 93 S.Ct. at 1297. If the right is "fundamental," the strict scrutiny analysis must be applied. If the right is not "fundamental," one of the lesser standards is applicable. *Kenyon supra*, 142 Ariz. at 79, 688 P.2d at 971. The strict scrutiny analysis is not usually applied to social or economic regulation. *Id.* at 78, 688 P.2d at 970.

We do not quarrel with the assertion that right of access to courts constitutes a "fundamental" right which would, if infringed, demand as justification a compelling state interest. *Bowman v. Niagara Machine and Tool Works*, 832 F.2d 1052 (7th Cir.1987). In the present situation, however, the plaintiff has not been denied access to the courts in the constitutional sense. The plaintiff cannot claim he has been denied access to the court simply because the Arizona Legislature has restricted a particular cause of action in a way that makes it unavailable to him. Such an approach confuses "access" with "success," and the plaintiff is not entitled to the latter. *Id.* at 1054. We do not believe the strict scrutiny test applies.

**(2) "Means–Scrutiny Analysis"**

A second and intermediate test is the "means-scrutiny" test. *Kenyon, supra* 142 Ariz. at 78, 688 P.2d at 970. This test has not yet been considered under the Arizona Constitution. It has been followed occasionally by the United States Supreme Court, but only in narrow areas involving classifications such as those based upon gender and illegitimacy of birth. *See, e.g., Michael M. v. Superior Court of Sonoma County*, 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981). To uphold the statute under this test, the court must find the state's interest to be "important" and the means adopted to serve that interest to be "reasonable, not arbitrary" and "having a fair and substantial relation to the object of the legislation" so that all persons in similar circumstances "shall be treated alike." *Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971) (quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920). In applying this intermediate test, courts must examine carefully the factual assumptions that underlie the asserted connection between the means adopted by the legislature and the goals which it seeks to achieve. *Kenyon, supra* 142 Ariz. at 78, 688 P.2d at 970. We do not believe it applies to this fact situation.

**(3) "Rational Basis"**

The constitutional requirement of equal protection under the "rational basis" test is only violated if the classification rests on grounds wholly irrelevant to the achievement of the state's objectives. *McGowan v. Maryland*, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). Moreover, in applying the test, the court accepts the legislative determination of relevancy so long as it is reasonable, even though it may be disputed, debatable or opposed by strong contrary argument. *Vance v. Bradley*, 440 U.S. 93, 111–12, 99 S.Ct. 939, 949–50, 59 L.Ed.2d 171 (1979);

*State v. Arnett,* 119 Ariz. 38, 48, 579 P.2d 542, 552 (1978).

Under the rational basis test, a statute will be upheld if there is any state of facts that can be reasonably conceived to sustain the classification. *Uhlmann v. Wren,* 97 Ariz. 366, 388, 401 P.2d 113, 128 (1965). A statute having some rational basis is not unconstitutional merely because it is not made with "mathematical nicety, or because in practice it results in some inequality." *Id.* at 388, 401 P.2d at 128. As long as the statute is not arbitrary or irrational, and is reasonably related to a legitimate state purpose, it must be upheld.

A.R.S. § 12–551 satisfies the rational basis test and is constitutional under the equal protection clauses of the Arizona Constitution. The classification created by A.R.S. § 12–551, that of manufacturers of machines sold for use more than 12 years before an injury occurs are immune from suit based upon a products liability theory, is reasonably related to the legislature's purpose in dealing with what was perceived in 1977 to be a products liability crisis. The legislature could have reasonably concluded that, by protecting manufacturers from liability for products sold 12 years before an injury, the perceived crisis of rising products liability insurance rates would be alleviated and new product development would be promoted. *Davis v. Whiting Corp.,* 66 Or.App. 541, 674 P.2d 1194 (1984); Statutes of Repose: Conflicts with State Constitutions: The Plaintiffs are Winning. 26 ARIZ.L.REV. 363, 373 (1984).

A.R.S. § 12–551 rests on grounds relevant to the achievement of this legislative objective and is a reasonable response to the products liability crisis as perceived by the legislature. It does not violate the equal protection clause of the Arizona Constitution.

## V. DUE PROCESS

Our constitution provides:
No person shall be deprived of life, liberty or property without due process of law.

Ariz. Const. art. 2, § 4. We have stated:
Although it is customary to consider the due process and equal protection clauses together, the areas of protection each offer are not coterminous.

*State ex rel. Babbitt v. Pickrell,* 113 Ariz. 12, 14, 545 P.2d 936, 938 (1976).

Under the due process clause, legislation will be considered constitutional if the particular statute is not unreasonable, arbitrary or capricious, and if the means selected in the statute have a real and substantial relation to the goals sought to be obtained. *American Federation of Labor v. American Sash & Door Company,* 67 Ariz. 20, 28, 189 P.2d 912, 917 (1948), *aff'd* 335 U.S. 538, 69 S.Ct. 258, 93 L.Ed. 222 (1949).

We believe the statute's result, that of prohibiting strict products liability claims for injuries caused by products more than 12 years old at the date of the accident, is rationally related to the legislative purpose of controlling the perceived products liability crisis. In enacting the statute, the legislature has not deprived the petitioner of his right to recover damages of action, but simply precludes the assertion of one possible theory of recovery at trial. A.R.S. § 12–551 is constitutional under the due process clause.

## VI. HOLDING

The 12 year statute of limitations applicable to products liability actions (A.R.S. § 12–551) is a valid statute under the Arizona Constitution.

The answer to the certified question is "no."

HOLOHAN and FROEB, JJ., concur.

MOELLER, J., did not participate in the determination of this matter; pursuant to Ariz. Const. art. 6, § 3. Judge DONALD F. FROEB of the Court of Appeals, Division One, was designated to sit in his stead.

FELDMAN, Vice Chief Justice, dissenting.

Unless, like Alice, we have tumbled into Wonderland, law and common sense tell us

that we cannot sustain a statute that requires victims to sue before they are injured. Nevertheless, the majority of this court today upholds just such a statute. So remarkable a result deserves careful analysis.

The facts are quite simple. The machine in question allegedly was defective and unreasonably dangerous for lack of safety guards. First sold in the summer of 1971, it had a useful economic life of over forty years. Bryant's injury occurred a little more than twelve years from the date of sale. As a result, the manufacturer contends that Bryant's strict liability claim is barred by the provisions of A.R.S. § 12–551. That statute, in conjunction with §§ 12–681 and 12–542, modifies the tort statute of limitations so that "no product liability action may be commenced and prosecuted if the cause of action accrues more than twelve years after the product was first sold," unless the action is brought upon theories of negligence or express warranty. The court describes this as a "statute of repose." Op. at 195, 751 P.2d at 511. That euphemism certainly sounds better than facing the more difficult question—whether our constitution permits the legislature to effectively bar an action for damages by requiring that it be filed before the injury occurs.

To state the issue is to answer it. The majority errs first by ignoring settled Arizona law which requires it to hold the statute unconstitutional under art. 18, § 6. Next, the majority again departs from Arizona precedent by applying the wrong standard of review to the equal protection challenge. Finally, the majority even misapplies the rational basis analysis in attempting to save the so-called "statute of repose" from its constitutional flaws.

## THE ABROGATION CLAUSE

Unless the "cause of action" is based upon negligence or breach of express warranty, A.R.S. § 12–551 prohibits the prosecution of product liability actions filed more than twelve years after the product is "first sold." Because Bryant's injury occurred more than twelve years after sale, the statute bars his strict liability claim before it could have been filed. We have held that such statutes effectively abrogate the right of action. *Barrio v. San Manuel Division Hospital for Magma Copper Co.,* 143 Ariz. 101, 692 P.2d 280 (1984). Article 18, § 6 of our constitution prevents the legislature from abrogating "the right of action to recover damages for injuries." The majority concludes, however, that the "doctrine of strict products liability" is not protected because it "did not exist at common law when our constitution ... was adopted in 1912." Op. at 195, 751 P.2d at 511.[1]

True, the "doctrine" of strict liability for injuries caused by a product was first recognized by this court in the 1960's. *See* op. at 195, 751 P.2d at 511. That historical fact is interesting, but totally irrelevant. Article 18, § 6 was not enacted to protect particular doctrines, theories or "causes of action." The text of the constitution protects a broader concept—"the *right of action* to recover damages for injuries." Art. 18, § 6 (emphasis added). Depending on privity, the *right of action* to recover damages for injuries caused by defective products was recognized at common law long before Arizona became a territory. *See Winterbottom v. Wright,* 10 M & W 109, 154 Eng.Rep. 402 (1842). While not universally applied to product liability cases until recent times, theories of strict and even absolute liability were recognized in tort law well before 1912. *See, e.g., Rylands v. Fletcher,* 1 L.R.–Ex. 265 (1866), *aff'd,* 3 L.R.–E. & I.App. 330 (1868);

---

1. As pointed out in *Barrio,* 143 Ariz. at 104–07, 692 P.2d at 283–86, the legislature, of course, has authority to regulate damage actions. As far as art. 18, § 6 is concerned, the real issue argued in this case was whether eliminating strict liability theories, thus relegating plaintiffs to negligence and express warranty theories long after the manufacture of the product, left plaintiffs with reasonable alternatives or created an insurmountable barrier that violated

art. 18, § 6. *Id.* This question, which goes to the heart of the case, is also ignored in the majority opinion and therefore will not be pursued further in this dissent. *But see Rubino v. DeFretias,* 638 F.Supp. 182 (D.Ariz.1986) (under abrogation clause, legislature could not eliminate battery action against doctor even though an alternate theory of malpractice was available).

PROSSER & KEETON ON THE LAW OF TORTS § 13, at 534 *et seq.* (5th ed. 1984). All that has happened since 1912 is the logical application of *Rylands v. Fletcher's* strict liability theory to the right to bring a product liability action.

The important point is that an action to recover damages caused by products was among the *rights* recognized long before the constitutional convention of 1910. By inquiring, instead, when any specific "doctrine" (op. at 195, 751 P.2d at 511), theory or "cause of action" (op. at 195, 751 P.2d at 511) was first recognized, the majority introduces a pernicious note of hairsplitting into a fundamental constitutional protection. Article 18, § 6 protects the broad concept of a "right of action"—a remedy for a wrong recognized at the time we became a state. This court has unanimously recognized the principle; the majority implicitly acknowledges it when it cites *Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 9, 730 P.2d 186 (1986), for the proposition that art. 18, § 6 "extends to all actions recognized at common law at the time of the article's adoption." Op. at 195, 751 P.2d at 511. *Boswell* is explicit on the distinction between "right of action" and specific tort theories. It holds that art. 18, § 6 protection is not limited to the specific causes of action, doctrines or theories of 1912:

> [It] was intended to take the right to seek justice out of executive and legislative control, preserving the ability to invoke judicial remedies *for those wrongs traditionally recognized at common law.*

*Boswell,* 152 Ariz. at 17, 730 P.2d at 194 (emphasis added). Thus, the constitutional protection

> is not limited to those elements and concepts of particular [rights of] actions which were defined in our pre-statehood caselaw. Article 18, § 6 protects the *right of people to seek "remedy by due course of law"....* The law must allow for evolution of common law actions to reflect today's needs and knowledge. Any other rule would allow those "long dead" to dictate solutions to problems of which they could not have been aware.

*Id.* at 17–18, 730 P.2d at 194–95 (emphasis in original, citations omitted).

## OTHER AUTHORITY

Not only does the majority misapply Arizona caselaw, it ignores the only case on point from a state with a provision virtually identical to ours. The wording of the first phrase in art. 18, § 6 of our constitution is evidently a direct borrowing from art. 23, § 7 of the Oklahoma Constitution of 1907.[2] The Oklahoma provision prohibits legislative abrogation of "the right of action to recover damages for injuries resulting in death." The Oklahoma Supreme Court considered the meaning of "right of action" under this clause of the Oklahoma Constitution in *Roberts v. Merrill,* 386 P.2d 780 (Okla.1963). At issue was the constitutionality of a statute precluding the recovery of worker's death benefits if the period between the injury and resultant death exceeded five years. The court rejected the contention that the protection of art. 23, § 7 was limited to negligence actions, the

---

2. Okla. Const. art. 23, § 7 (1907) states in full:
   The right of action to recover damages for injuries resulting in death shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation.
   The Oklahoma provision is presented in the same form in which it is printed in the COMPILED LAWS OF OKLAHOMA (1909) at page 136. This would have been the format available to our convention delegates. The only major difference between this provision and our abrogation clause is the limitation to injuries resulting in death. As originally presented to our convention by delegate Cunniff, our abrogation clause stated:
   The right of action to recover damages for injuries shall never be abrogated, and the

amount *recoverable* shall never be subject to statutory limitations.
JOURNALS OF THE CONSTITUTIONAL CONVENTION OF ARIZONA, morning session, Dec. 5, 1910, at 567 (C. Cronin, ed. 1925) (emphasis added). On that same page in the JOURNALS, there is a reference to the Oklahoma Constitution, as our delegates finalized the various protections that would go into art. 18 of our constitution. The form of the clause offered by delegate Cunniff and the nearby reference to the Oklahoma Constitution strongly suggest the source of art. 18, § 6. The word "recoverable" was apparently switched to "recovered" as a stylistic modification.

only wrongful death theory recognized before statehood. It held that the constitution protected the entire right of action, including theories and causes which had evolved since adoption of the constitution.

It suffices to say that ... the Constitution now, as before, absolutely prohibits the abrogation of the "right of action to recover damages for injuries".... *The "right of action"—a term far from synonymous with "cause of action"— means the right to effectively pursue an available remedy in a suitable forum,* whether successfully or not.... *The existence of a cause of action would not be meaningful without an adequate opportunity for its pursuit. That opportunity stands constitutionally protected.* While by its terms art. 23, § 7 creates *no* cause of action ..., it continues, with like force and effect as before, to prohibit the legislature from erecting barriers to its effective prosecution, *whatever the forum or remedy may be.*

*Id.* at 785–86 (last two emphases in original; citations omitted).

*Roberts* is important not only for its sound reasoning, but also because it construes the parent constitutional clause to our art. 18, § 6. *See, e.g., Faires v. Frohmiller,* 49 Ariz. 366, 372, 67 P.2d 470, 472 (1937) (where Arizona constitutional provision was based on similar provisions in constitutions of other states, judicial decisions from those other states on interpretation of the adopted provision are "very persuasive"). Of course, having ignored the *Roberts* case, the majority cannot be criticized for failing to apply the *Frohmiller* doctrine.

The majority opinion, however, may be justly criticized for ignoring the great weight of authority from other jurisdictions. At least thirty-seven states have constitutional "open court" provisions guaranteeing the right of access to the courts. *See* McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose,* 30 AMER.U.L. REV. 579, 615 n. 218 (1981). Courts across the nation have repeatedly recognized that Arizona's abrogation clause "is more rigid

and specific in establishing an individual's constitutional right to recover damages for injuries" than open court provisions in other states. *See, e.g., Berry v. Beech Aircraft Corp.,* 717 P.2d 670, 677 (Utah 1985); *Boswell,* 152 Ariz. at 17 n. 18, 730 P.2d at 194 n. 18. Despite dealing with less specific, "weaker" open court clauses, the great majority of other state courts have held product liability statutes of repose unconstitutional. *See* Comment, *Product Liability Statutes of Repose as Conflicting with State Constitutions: The Plaintiffs are Winning,* 26 ARIZ.L.REV. 363 (1984). Federal courts construing the Arizona Constitution have reached similar results. *See, e.g., Davis v. Dow Chemical Corp.,* 819 F.2d 231 (9th Cir.1987) (application of Arizona wrongful death statute to bar action by survivors of victim killed by defective product would violate Arizona Constitution's abrogation clause).

### THE EQUAL PROTECTION CLAUSE

Bryant also challenges § 12–551 on the grounds that it violates the equal protection clause of the state and federal constitutions. A strict scrutiny analysis must be applied if the statute affects a "fundamental right." Op. at 196, 751 P.2d at 512. The majority holds, however, that the statute affects no fundamental right because plaintiff can still sue in negligence and therefore has not been denied access to the courts.

That analysis misses the point. Access to the courts is not the only fundamental right threatened by this statute of repose. Rights are fundamental, as the majority acknowledges, when they are "explicitly or implicitly guaranteed by the Constitution." Op. at 195–196, 751 P.2d at 511–512, citing *San Antonio Independent School Dist. v. Rodriquez,* 411 U.S. 1, 33–34, 93 S.Ct. 1278, 1297, 36 L.Ed.2d 16 (1973). The "right of action to recover damages for injuries" is explicitly guaranteed by art. 18, § 6 of the Arizona Constitution and is, therefore, a fundamental right for Arizona citizens. At the very least, the statute in question regulates that fundamental right and compels this court to employ a strict scrutiny analysis. *Kenyon v. Hammer,* 142 Ariz. 69, 78–79, 688 P.2d 961, 970–71 (1984).

As the majority acknowledges, under a strict scrutiny analysis a regulatory statute may be upheld only if there is a "compelling state interest to be served and the regulation is necessary to achieve the legislative objective." Op. at 196, 751 P.2d at 512, citing *San Antonio Independent School Dist., supra,* and *Arizona Downs v. Arizona Horsemen's Foundation,* 130 Ariz. 550, 555, 637 P.2d 1053, 1058 (1981). Assuming, as the majority does, that the state interest served by the statute in question was the insurance "crisis" of 1977, which supposedly produced a compelling need to reduce product liability insurance rates (op. at 197, 751 P.2d at 513), this record falls far short of showing that the statutory regulation in question was "necessary" to that "compelling interest."

## RATIONAL BASIS

In fact, neither the record nor the majority's opinion even demonstrates how the statute is rationally related to that interest. It is here that the majority makes its penultimate error. Having erroneously applied the lesser, rational basis test, the majority seeks to find a rational connection between the classifications created by the statute and its objectives. Op. at 197, 751 P.2d at 513. We are told that courts accept "the legislative determination of relevancy so long as it is reasonable, even though it may be disputed, debatable or opposed by strong contrary argument." *Id.* (citations omitted). No doubt this is true, but to what does the majority refer? The opinion fails to inform us of any legislative determination of relevance. A search of the legislative history on this statute reveals neither a legislative determination of relevancy nor a specific legislative considera-

tion of the subject. *See* Minutes of Meeting, Committee on Commerce, March 20, 1978.

It is true, nevertheless, that we may uphold the statute where some rational basis between the regulation and state objectives can be ascertained from the facts before the court. *See, e.g., Uhlmann v. Wren,* 97 Ariz. 366, 388, 401 P.2d 113, 128 (1965). On this issue, with no record at all before it, the majority holds that our legislature "could have reasonably concluded" that a statute of repose would ameliorate "the perceived crisis of rising product liability insurance rates" and promote "new product development." Op. at 197, 751 P.2d at 513.

Lacking facts to support this factual conclusion, the court instead sustains its holding by citing *Davis v. Whiting Corp.,* 66 Or.App. 541, 674 P.2d 1194 (1984). Rather than supporting the proposition, *Davis* illustrates its flaws. While the Oregon court of appeals did find a rational basis, it dealt with an Oregon statute that did much more than grant manufacturers protection from strict liability theories; instead, it *completely abolished* the right of action for damages caused by defective products unless the action was brought within eight years from the date of sale. *Id.* at 543, 674 P.2d at 1195. This is drastic medicine indeed, but unavailable in Arizona under art. 18, § 6. *Barrio, supra.*

While it is possible to conclude that an absolute bar to any product liability action might reduce premiums, it is impossible to see any rational basis for believing that abolition of one theory among several will reduce premiums. Nothing in the legislative record supports such a conclusion. *See* Minutes of March 20, 1978, *supra.*[3]

---

**3.** These minutes establish only that Mr. Jones, a lawyer representing the American Insurance Association, discussed the bill and answered questions. Mr. Jones's expertise, if any, in rate making is not known to this author and is not established by the record. No relevant studies, statistics or data seem to have been cited to the Committee. No one has cited any to this court. So far as we know, none exist. It is hardly self-evident that premiums will be reduced if one very small class of plaintiffs is required to sue in negligence instead of strict liability. All this statute accomplishes is to place obstacles in the path of a select group of tort victims trying

to recover damages from a particular group of defendants. The avowed public purpose is a reduction of insurance premiums for the benefit of all our citizens. In reality, the legislation discriminates against one small segment of our population by granting special benefits to another. This result plainly violates the text of our state constitution, which *explicitly* prohibits "special or exclusive" legislation. *See* Ariz. Const. art. 2, § 13 (equal privileges and immunities) and art. 4, pt. 2, § 19(13) (barring the grant of *"any* special or exclusive privileges [or] immunities" to *"any* corporation, association, or

Nothing presented to us in the briefs of counsel or cited in the majority opinion touches upon the question. So far as we know, the experience of other states does not justify such a conclusion. It is certainly not supported by history, because the statute in question has been in effect for eleven years without any reduction in Arizona's product liability premiums. If Arizona rates are significantly below those charged in our sister states, neither counsel nor the majority has bothered to inform us that the millenium has arrived. If "new product development" in Arizona has been promoted by this statute, so that we may now disband our industrial development boards and the like, that fact has certainly not become public knowledge.

Simply put, the majority's conclusion that the statute will alleviate rising product liability insurance rates is merely unfounded speculation. There is a difference between "rational basis" and "basic rationalization." The equal protection clause does not permit us to destroy the rights of a class or group of Arizona citizens for some ephemeral, unsupported hope.

One final thought. There must come a time when legal doctrine and rhetoric are required to withstand the tests of history and common sense. The framers of our constitution repeatedly expressed the most profound concern for the plight of accident victims. *See, e.g., Kenyon v. Hammer*, 142 Ariz. 69, 79–81 n. 9, 688 P.2d 961, 971–73 n. 9 (1984) (detailed review of constitutional debates relating to protection of accident victims). Our constitutional delegates abolished the fellow servant doctrine, made contributory negligence a question solely for the jury, barred the legislature from reducing the damages recoverable for death or injury, mandated the institution of a comprehensive workers' compensation scheme and, finally, declared that the legislature would *never* be permit-

ted to abrogate the right to seek judicial recovery of damages for personal injuries.[4] Obviously, compensation for injuries was a fundamental tenet of the delegates of our convention. *Id.* This was not just a matter of humanitarian concern but a method of enabling the people of this state to control their own destiny by having access to the courts—the one place where ordinary people might find protection from the powers of vested interests. *See, e.g.,* J.W. BYRKIT, FORGING THE COPPER COLLAR: ARIZONA'S LABOR–MANAGEMENT WAR OF 1901–1921 (1982).

Wherever the distinguished delegates may be, they must surely be scratching their heads—the majority opinion simply defies the history, spirit, intent and language of our state constitution by permitting the legislature to make incremental erosions of our most basic rights and to destroy every inch of progress made since 1912. As Justice Cardozo observed,

> We take a false and one-sided view of history when we ignore its dynamic aspects. The year books can teach us how a principle or a rule had its beginnings. They cannot teach us that what was the beginning shall also be the end.

B. CARDOZO, THE GROWTH OF THE LAW 104–05 (1924). Hopefully today's majority decision is only a temporary step backward in our enforcement of the Arizona Constitution.

GORDON, C.J., concurs in the dissent.

---

individual") (emphasis added). The majority offers no reason or rationale for ignoring our state constitution.

**4.** *See* Ariz. Const. art. 2, § 31 (damages for death or personal injuries); art. 6, § 1 (judicial power); art. 18, § 3 (prohibition against contractual immunity of employer from liability for

negligence), § 4 (abolition of fellow servant doctrine), § 5 (contributory negligence and assumption of risk always fact questions for the jury), § 6 (recovery of damages for injuries), § 7 (mandating passage of employer's liability law), § 8 (mandating passage of workers' compensation law).